Wood v. Drainage District No. 2, Conway County.

Opinion delivered December 8, 1913.

1. Drainage districts—powers—liabilities.—A drainage district has only such powers and has only such liabilities as are prescribed by the statute creating it. (Page 422.)

2. Drainage districts—liability for tort.—Where the statute creating it does not authorize a drainage district to levy an assessment for the satisfaction of a judgment for tort, rendered against it, the district will not be held liable in tort for damages to plaintiff's land for overflow caused in the construction of the drain. (Page 422.)

3. Drainage districts—damage to land—personal liability of commissioners.—Under act of May 27, 1909, page 829, creating a drainage district, the commissioners of the district are exempted from liability for damages resulting to a land owner from faulty or improper construction of the improvement. (Page 423.)

4. Drainage districts—damage to land—liability of contractor.—The contractor who undertakes to construct the drain under contract with the district commissioners of the district created by act of May 27, 1909, page 829, is liable for injuries done to the property of another, by reason of his negligence. (Page 424.)

5.  PLEADING—DEFECTIVE COMPLAINT—MOTION TO MAKE MORE SPECIFIC.—
    Since the adoption of the Code, if the substantial facts which con-
    stitute a cause of action are stated in the complaint, or can be
    inferred by reasonable intendment from the matters set forth,
    although the allegations of these facts are imperfect or indefinite,
    the proper mode of correcting the deficiency is not by demurrer,
    but by motion to make more definite and certain.  (Page 423.)

6.  PLEADING—COMPLAINT—REQUISITES—DEMURRER.—A complaint must
    · contain a plain and concise statement of the facts constituting the
    cause of action; every essential element of the cause of action
    must be stated, and it is not allowable to plead mere abstract con-
    clusions of law.  A complaint defective in this particular is demur-
    rable.   (Page 424.)

7.  DRAINAGE DISTRICTS—ACTION FOR DAMAGES—FAILURE TO STATE CAUSE
    OF ACTION.—In an action for damages to plaintiff's land by the
    contractor .constructing a drain for a drainage district, the com-
    plaint held not to state a cause of action against the contractor.
    (Page 424.)

Appeal from Conway Circuit Court; *Hugh Basham,*
Judge; affirmed.

*W. P. Strait,* for appellants.

This case is different from 94 Ark. 380, where it
was held that improvement districts were exempt from·
liability for personal injuries.  Here we have a case of
invasion; taking and damaging private property for pub-
lic use without compensation.  The right· of property is
before and higher than any constitutional sanction * * *
and can not be appropriated or *damaged* without just
compensation.  Constitution, art. 2, § 22; 11 Am. Rep.
352; 102 Am. St. 881; 65 Am. Dec. 680; 93 *Id.* 766; 81
Pa. 355; 61 L. R. A. 837; 99 U. S. 635; 75 Mo. 213; 94 Am.
Dec. 97, and notes; 10 A. & E. Enc. Law 1111; 127 Ill.
438; 153 Mass. 123; 135 Mo. 558.

*Wm. L. Moose,* for appellee.

No damages for personal injuries are recover-.
able against an improvement district.  They are *quasi*-
public corporations, and have no property subject to exe-
cution.  95 Ark. 345; 94 *Id.* 380.

HART, J.  W. L. Wood and Frank Pryor instituted·
this action in the circuit court against Drainage District

No. 2, of Conway County, Arkansas, T. C. Hervey, J. S. Moose and T. J. Kissire, commissioners of said district, Napanee Drainage Company and Frank Reed. The complaint alleges that W. L. Wood is the owner of cultivated lands situated within said district, and that during the year 1912, Frank Pryor, as his tenant, undertook to raise a crop of corn and cotton on said land. The complaint further alleges:

"That on the........................day of................................, 1910, the said commissioners acting for and representing the said Drainage District No. 2, in their official capacity, contracted with the defendant, Napanee Drainage Company, a partnership composed of Harry Green, Willis Reed, Frank Reed and Arthur Rosenberg, for a valuable consideration to dig, excavate and construct a large drainage canal across and in said drainage district, which said drainage canal passed across, over, through, contiguous and near the above described land, which said contract so entered and made provided that said canal should be completed on or by the 1st day of March, 1912; and that said defendant, Frank Reed, managing the business of the partnership of which he was a member, as above alleged, had charge of the construction thereof, and has been in the actual superintendency, control, management and direction thereof; that the said defendant partnership, Napanee Drainage Company, failed to comply with its said contract and to complete the said canal within the time provided therein, thereby negligently and unnecessarily delaying the draining of said land and holding large bodies of water therein in said district, which is still held to the damage and detriment of the above described land of the plaintiffs.

"That during a long period of time extending from March 1, 1912, until July 10, 1912, along said canal excavation, across and contiguous to the land of this plaintiff, said defendants constructed, and the said defendant, Frank Reed, operating under defendant's contract and by the authority of the said Drainage District No. 2, through its directors as aforesaid, has negligently main-

tained in said artificial canal large bodies of water collected and gathered therein, and has negligently maintained dams and embankments across the same, thereby establishing artificial ponds or pools into which was pumped from the canal proper large quantities of water to a height equal to and above the surface of the surrounding country and this plaintiff's land, and negligently maintained said bodies of water for long periods of time between the 1st of March and the 10th of July, 1912, on such high level as to cause the same to seep through and overflow and saturate the said land of the plaintiff above described with water to such an extent as to totally destroy its use and usable value for agricultural purposes, and to make it uncultivatable for the year 1912, and to totally destroy the crop of corn and cotton and the products thereof planted, to be planted and to be grown upon said land for the year 1912, and to the plaintiff's damage in the sum of $500.''

The court sustained a demurrer to the complaint, and the plaintiffs, electing to stand on the complaint, judgment was entered against them. They have duly prosecuted an appeal to this court.

Section 22, article 2, of our Constitution, provides that private property shall not be taken, appropriated or damaged for public use without just compensation therefor. The drainage district in question was organized under an act to provide for the creation of drainage districts in this State, approved May 27, 1909. Acts of 1909, page 829. The act in question recognizes the section of the Constitution quoted above. Under the act, after the petition required by the statute has been filed, and the county court has determined upon the establishment of the drainage district, and the plan for its construction has been adopted, commissioners are appointed who shall have control of the improvement in their district. Section 7 provides that the commissioners shall assess all damages that will accrue to any land owner by reason of the proposed improvement, including all injury to land taken and damaged. Section 8 provides that

any property owner who may be dissatisfied with the assessment of damages in his favor by the commissioners may give the commissioners, in thirty days after they have filed their assessment, notice that he demands an assessment of his damages by a jury, and it shall then be the duty of the commissioners to institute a suit in the circuit court to condemn the lands that are thus taken or damaged in making said improvement.

In the case of *Newgass* v. *Ry. Co.,* 54 Ark. 140, which was a condemnation suit by a railroad company, the court said:

"If the appropriation of the part and its use as a railroad resulted in flooding the remainder of appellant's lands, the damage so occasioned should be included in the assessment; but no account should be taken of injuries thereafter to result from an improper construction or maintenance of the bed, for the condemnation does not authorize either, and the corporation that condemns the land will be liable for such injuries as may thereafter result therefrom."

We have also held in condemnation proceedings by railway companies that where, at the time of the trial, it is shown that the railroad has been constructed over the land sought to be condemned, and damages have resulted to the land owner from faulty or improper construction, such damages may be recovered in the condemnation proceeding; but they are not allowed because they are a part of the compensation allowed the land owner for property taken or damaged within the meaning of the Constitution, but are allowed because the railroad company may not injure the property of others by the negligent or unskillful exercise of a right without a corresponding liability; and they may be recovered in the same action because the law does not favor splitting up causes of action.

In the case of *Board of Improvement of Sewer District No. 2* v. *Moreland,* 94 Ark. 380, we held that improvement districts in cities and towns are *quasi*-public corporations, having no powers, duties or liabilities except as expressly conferred by statute, and that they are

not liable for negligence whereby an employee is injured while engaged in the construction of the improvement.

In *Nugent* v. *Levee Commissioners,* 58 Miss. 197, it was held that a board of levee commissioners was not liable in tort for damages arising from the improper construction of a levee. In that case the court said:

"The levee commissioners are simply public officers clothed with a corporate capacity solely for the convenience of administration, and are endowed with no representative character as respects the taxpayers; and if they had such character, it would be strictly limited to those duties which by law they were authorized to perform. * * * In all the cases on the subject of the liability of these corporations, it is admitted that the liability in each case depends on the true construction of the statute creating the corporation. The difference in the cases seems to be in the mode of arriving at the intention of the legislature. In some it is held that the liability arises from the constitution of the body and the business it is charged with, if there be no restrictive language; in others, it is said there ought to be an express provision for liability before it can attach. In this case the meaning of the act seems to be clear. The tax is levied, as expressed in the statute, 'for the purpose of repairing and constructing the levees, and for carrying into effect the object and purpose of securing the counties of Bolivar, Washington, and Issaquena from overflow from the Mississippi River.' This does not include the very different object of paying damages for the default and misconduct of the persons charged with the execution of the act. This expression of the purpose of the tax in the act is an exclusion of all other purposes. If such damages were chargeable on the fund, their payment might prevent the accomplishment of the purpose for which the tax was levied. The whole fund might be consumed in compensating land owners for a failure to receive that protection from the levees which they were designed to afford. The taxes levied, instead of being a fund for securing this protection, would be converted, as was said

by Lord Mansfield in an analogous case, into the capital of an insurance company to indemnify against losses from floods. The taxpayers would become insurers against damages, instead of contributors to a fund to be used in preventing the recurrence of damages. To entail so alarming a liability on property holders without their free consent ought to require a very plain expression of the legislative will, if indeed there be any power in a free government thus to deal with the property and business of the people. That a taxpayer living in the district should, on account of the negligence or misconduct of the persons administering the powers of the corporation, or their agents or employees, fail to receive the protection from overflow to secure which he was taxed, is indeed a hardship; but we are not authorized to remove this hardship by the imposition of a burden on his co-sufferers. He must be left to his remedy against those by whose misconduct he was injured, whose liability for their own acts and omissions is to be determined by the rules of law applicable to such cases. See also *Hensley* v. *Reclamation District*, 121 Cal. 96, 53 Pac. 401; *Thompson et al* v. *Board of Commissioners of Polk County*, 36 N. W. (Minn.) 267, 14 Cyc. 1057."

So here it may be said that the drainage district has only such power, and has only such liabilities, as are prescribed by the statute creating it. The district has no property, out of which a judgment for tort could be satisfied. It is true, it has the power to levy assessments, but this can be done only for the purposes provided in the act. And the statute does not give it any power to levy assessments for the satisfaction of judgments for tort against it. Therefore, we hold that the district was not liable, under the allegations of the complaint. Neither are the commissioners of the district liable. Section 16 of the act provides that no member of any board of improvement shall be liable for any damages sustained by any one in the prosecution of the work under his charge, unless it shall be made to appear that he has acted with corrupt and malicious intent. Thus, it will be seen that

the statute exempts the commissioners from damages which result from the faulty or improper construction of the improvement. We held that the commissioners of a board of improvement were not liable under a similar statute. *Board of Improvement Sewer District No. 2 v. Moreland,* 94 Ark. 380. But it by no means follows that the contractors are not liable. Section 13 of the act provides that no work exceeding one thousand dollars shall be let without public advertisement; and from the allegations of the complaint it appears that the defendants, the Napanee Drainage Company and Frank Reed, were concluding the work under contract with the commissioners of the drainage district, and they are, therefore, independent contractors. They had a right to construct the improvement under the plan adopted and under the contract made with the drainage commissioners; but if, in the exercise of that right, by negligence, they injured the property of another, they are liable. *Nugent* v. *Board of Commissioners, supra; Thompson* v. *Board of Commissioners of Polk County, supra.*

This brings us to the question of whether the complaint states a cause of action against them. Since the adoption of our Code, it has been uniformly held that if the substantial facts which constitute a cause of action are stated in the complaint, or can be inferred by reasonable intendment from the matters set forth, although the allegations of these facts are imperfect or indefinite, the proper mode of correcting the deficiency is not by demurrer, but by motion to make more definite and certain. Our Code, however, requires that the complaint should contain a plain and concise statement of the facts constituting the cause of action. Every essential element of the cause of action must be stated, and it is not allowable to plead mere abstract conclusions of law. Such defects may be reached by demurrer. *Southern Orchard Planting Co* v. *Gore,* 83 Ark. 78. It appears from the allegations of the complaint that as the work of digging the ditch, or canal, progressed, dams were constructed across it and water was pumped into that part of the canal be-

tween the dam and the place where the work of excavation ended. The complaint does not state any facts which show that this was the result of negligent or improper construction of the ditch. It may be that the dredging machinery was placed upon a boat and the boat floated along on the water of the canal to facilitate the work of excavation. And presumably this was what was done in the present case. There is no statement of facts that shows that such action on the part of the contractors would be an improper or unskillful construction of the ditch. The complaint does allege that the work of constructing the ditch was let to the Napanee Drainage Company, and that Frank Reed was its manager, in charge of the work, and that the contract provided that the canal should be completed on or by the first day of March, 1912, and that by the negligence of the defendant, water was allowed to stand in the canal between the dam and the place where the excavation ended until July 10, 1912, and that plaintiff's land was damaged by the water seeping through on it. The mere fact that water was allowed to stand in the canal while the same was being constructed does not constitute negilgence, nor does the further fact that the canal was not completed within the time designated in the contract show negligence. This allegation does not state facts sufficient to constitute negligence, and is a mere conclusion of law on the part of the pleader. It may be that the completion of the canal was delayed on account of the weather, or some other unforeseen cause. In any event, the complaint itself does not state any facts in regard thereto which would constitute negligence. Therefore, the court was right in sustaining the demurrer to the complaint, and the judgment will be affirmed.