NORTH ARKANSAS HIGHWAY IMPROVEMENT DISTRICT
No. 1 *v.* GREER.

Opinion delivered March 10, 1924.

1. HIGHWAYS—DAMAGE TO LAND BY BORROW-PITS—JURY QUESTIONS.—In an action against a road improvement district created by Acts 1917, No. 213, and against road contractors for damages to plaintiff's land sustained by reason of borrow-pits dug thereon by the contractors, the questions whether the land had been damaged by the digging of the borrow-pits, and as to the amount of such damage, *held* for the jury.

2. HIGHWAYS—MEASURE OF DAMAGE TO LAND.—The owner of land on which road contractors dug borrow-pits was entitled, as damages, to the difference between the market value of the land before the excavations were made and the market value thereafter, in view of its availability for any use to which it was plainly adapted, as well as the most favorable purpose for which it could be used to bring the highest market price.

3. HIGHWAYS—DAMAGE TO LAND—BENEFITS.—In an action for damage to plaintiff's land caused by borrow-pits dug by road contractors, the jury were properly instructed not to consider the benefits accruing to the land by reason of the building of the road, in fixing the amount of the damages.

4. HIGHWAYS—DISTRICT'S LIABILITY FOR DAMAGE BY CONTRACTOR.—Under Acts 1917, No. 213, authorizing a road improvement district to build a road and providing for assessments and for furnishing borrow-pits to the contractors, the district was liable for damage to land by reason of the contractors digging borrow-pits thereon, where the taking of the land for that purpose was authorized by the district.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; affirmed.

*W. D. Davenport,* for appellant.

The damages were excessive. The measure of the damages was the value thereof at the time of the taking, not after the road was completed. 103 Ark. 412. The district is a *quasi*-corporation, and is not liable for a tort, and the commissioners are limited to the payment of such claims as they are authorized under the law to pay. While the district can levy assessments, it cannot do so to satisfy judgments for torts against it, but only for the purpose for which it was organized. 110 Ark. 416; 94 Ark. 380; 95 Ark. 345.

*Brundidge & Neelly,* for appellee.

The dirt excavated was used in the construction of the road, and the district is as much liable therefor as for gravel purchased. 140 Ark. 348, and cases cited.

Wood, J. This action was instituted by the appellee as executor of the estate of J. H. Greer, deceased, against the appellants, North Arkansas Highway Improvement District (hereafter called district) and Booth Brothers and Brown, contractors. The appellee alleged that the appellant unlawfully entered upon the lands of J. H. Greer, deceased, which are described, for the purpose of securing dirt to build the roadbed of the district, and dug four borrow-pits from fifty to sixty feet wide and three feet deep; that the lands on which these borrow-pits were dug were valuable for building sites; that the appellants negligently failed and refused to provide suitable drainage for the surface water that would be dammed up on said lands by reason of the construction of the roadbed, and thereby caused the lands of the decedent to be flooded with water to such an extent as to render the same unfit for cultivation, to the damage of his estate in the sum of $2,000, for which appellee prayed judgment.

The appellants, in separate answers, denied the material allegations of the complaint.

The appellee testified that he was the executor of the estate of J. H. Greer, deceased, and that the contractors constructing the road for the district went upon the lands described in the complaint and dug four holes. The witness gives the dimensions of the holes or pits that were dug. He stated that the lands where the pits were dug were good building sites along the highway before the pits were dug; that the estate had been damaged in the sum of $1,050; that, if the contractors had taken the dirt out of the right-of-way ditch, where it should have been taken from, and made the ditches of sufficient width and depth, the drainage would have been sufficient; that there was plenty of dirt on the right-of-way of the district to have made the fills without going upon the appellee's land; that the borrow-pits and ditches as left by the contractors hold water the year round. Witness made complaints to the commissioners of the district, and they agreed to have the condition remedied. Two of the commissioners stated that the conditions in the contract had not been complied with in the digging of the ditches and borrow-pits, and that they would see that the conditions complained of were remedied before they paid the contractors.

On cross-examination the appellee stated that he claimed damages only for the borrow-pits and the stagnant water. Witness told the contractors they might get dirt off of the knoll of some other lands, but did not authorize them to get the dirt off of the land in question. Appellee's land would be worth $10 per acre more if the borrow-pits were not there. Witness did not know the difference between the value of the land before and after the digging of the pits, eliminating the building of the road, or before the road was completed.

Several witnesses testified to the effect that the digging of the borrow-pits rendered the land practically valueless for sale on account of the standing water in front; that the amount of damage done to the land was the amount it would take to haul dirt and fill up the pits. One witness testified that the water could have been

drained off if the ditches had been properly constructed; that the pits were originally dug on high ground. There were between two and three acres of ground taken.

One of the witnesses testified for the appellee to the effect that he had seen the borrow-pits on the Greer land, and that these pits rendered the land unsuitable for habitation because of the danger of malarial fever from bites of mosquitoes bred from the pools of stagnant water standing along the road.

The chairman of the board of commissioners of the district testified that the commissioners built the road under certain plans and specifications prepared by the engineers of the district, and that Booth Brothers were the contractors. They gave notice of the filing of the plans and specifications in the county clerk's office, and also notice of the assessment of benefits and damages; that the commissioners of the district did not authorize the contractors to enter upon any land not belonging to the district without first making a settlement with the party before commencing the work. He exhibited the form of the contract upon which the work was done. There is a provision in this contract which allows the district to offset any damages it has sustained, by reason of the failure of the contractors to do the work according to the plans and specifications, against the compensation due the contractors for their work under the contract. This commissioner testified that the construction of the road caused the Greer land to be drier and more valuable than it was before the improvement was made; that the assessment of benefits was made before the ditches and road had been built. This witness, on cross-examination, testified that the land in controversy would be more valuable if the borrow-pits had not been dug and if the ditches had been properly constructed.

Booth, a member of the firm of contractors, testified, among other things, that Greer told him to get all the dirt he wanted, and didn't specify the place where to stop getting it. The land was worth ten or twelve dollars an acre before and about twenty dollars an acre

since the construction of the road. On cross-examination, witness stated that he did not directly ask Greer about getting dirt off of the land in controversy; that the pits were some damage to the property. The engineer of the road told the contractors to get the dirt from appellee's land to save the overhaul.

There was other testimony to the effect that the land of the estate of Greer was drier and had been enhanced in value by reason of the construction of the improvement. One of the members of the firm of engineers for the district testified to the effect that the ditches were cut under the direction of his firm. The plans called for ditches to drain the highway, and not the people's land along the highway. The land was drained better after the ditches were dug than before. Greer told witness that he had given the contractors permission to get dirt off the high places to make the fills. Witness knew that the contractors were getting the dirt off of Greer's land. Witness identified § 77 of the contract between the district and the contractors, which provided that, if there was not enough material within the right-of way to complete the grading, the contractor should furnish the additional material, and the land for borrow-pits was to be furnished by the district. "Where material is borrowed the contractor shall not excavate the borrow-pits below the general drainage level so as to form pockets or holes, nor shall he leave the banks from which he has taken the material rough or uneven in line. All borrow-pits shall be connected up with the general drainage scheme of the improvement so as to insure their being properly drained."

Another one of the commissioners testified that there was an objection to the borrow-pits, and the board did not authorize the digging of them. It knew nothing of it until Greer complained about it, and he told them it was no fault of the board. The appellee didn't complain about the land in question. The commissioners invariably settled with all parties for dirt before they took the dirt.

The court instructed the jury, in substance, that, if the appellants entered upon the lands of Greer without right, and made excavations thereon which damaged the lands, the appellee would be entitled to recover the difference between the market value of the land before the excavations were made and the market value thereafter; that, in assessing the damages, the jury would not take into consideration the benefits accruing to the lands by reason of the building of the road; that, before the appellee could recover against the district, the jury must find that the district, through its duly authorized agent, acting within the scope of his authority, had authorized the contractors to go upon the land and take the dirt therefrom; that, if the appellee authorized the contractors to go upon the land in controversy and remove the dirt, they would find in favor of the district as to damages from digging the borrow-pits.

The court refused to grant the district's prayer for a directed verdict, and also refused a prayer to the effect that, before the appellee could recover, he must show by a preponderance of the evidence that the highway was not constructed according to plans and specifications adopted by the district and approved by the Highway Department; and also to the effect that, if the commissioners gave notice for two weeks, in a *bona fide* newspaper, that they would hear any complaints filed with them, and that the appellee failed to file complaint for damages, he could not recover unless the jury should find that the road was not constructed according to plans and specifications, which resulted in overflow and damage to the lands in controversy.

The jury returned a verdict in favor of the appellee in the sum of $400. Judgment was entered in favor of the appellee against the district and the contractors for that sum, from which is this appeal.

1. The appellant concedes that the appellee has been damaged by the digging of the borrow-pits upon the lands in controversy, but contends that the judgment is excessive. The issues as to whether or not the lands

in controversy had been damaged by the digging of the borrow-pits and the amount of such damage, if any, were, under the evidence, issues for the jury. The jury might have found from the testimony of the appellee and his witnesses that the lands were damaged by the digging of the borrow-pits in the amount of the verdict. The appellee testified that the borrow-pits were dug on knolls that were good building sites along the highway and that the damages by reason of destroying these building sites would amount to $1,250. Other witnesses for the appellee testified to the effect that these borrow-pits rendered the lands unsuitable for habitation because of the pools of stagnant water left standing along the highway; that, before the borrow-pits were dug, the water from the land dried up in the summer, but the holes caused by the borrow-pits did not dry up, and were consequently breeding places for mosquitoes all through the summer. There was substantial testimony to sustain the verdict of the jury, that the digging of the borrow-pits caused the damage to the lands in controversy. and also as to the amount of such damage.

These issues were submitted to the jury under correct declarations of law. The jury had the right to consider the value of the land taken or damaged for building purposes. "The measure of the owner's compensation for the land taken or damaged is the market value thereof at the time of the taking for all purposes, comprehending its availability for any use to which it is plainly adapted, as well as the most valuable purpose for which it can be used and will bring most in the market." *Fort Smith & Van Buren Dist.* v. *Scott,* 103 Ark. 405-412, and cases there cited.

2. The district next contends that it is not liable because, under the terms of the act creating it, it is a *quasi*-corporation, and is not liable for the torts of the contractor, and that the taking or damage of Greer's land for the building of the road is a tort committed by the contractors, for which they are liable, and not the

district. We do not concur with learned counsel for the
district in this contention. The act under which the dis-
trict was created contemplated that the owners of land
taken or damaged for the purpose of the improvement
should be paid by the district. See act No. 213 of the
Acts of 1917. The act is too long to set forth, but an
examination of its various provisions will show that the
commissioners had authority to make the improvement.
For instance, § 17 provides that "there shall be assessed
on the real property within the entire district such pro-
portion of the assessment of benefits against the land
in the entire district as will be sufficient to complete the
improvements and pay all expenses of the district, with
ten per cent. added for unforeseen contingencies; * * *.
If the proportion of the assessment of benefits first levied
is not sufficient to complete the improvement, the com-
missioners may make additional levies of such amounts
as shall be sufficient to complete the improvement and
pay all indebtedness of the district."

The taking or damaging of lands in the district for
the necessary and proper construction of the improve-
ment is not a tort. Section 77 of the contract between
the district and the contractors provides, among other
things, "the land for borrow-pits shall be furnished by
the district." Now, when notice was given, under § 10
of the act, of the filing of the plans in the office of the
county clerk of White County, and when notice was given
of the assessment of benefits under § 12 of the act, the
plans did not contemplate the taking of the land in con-
troversy for borrow-pits. The necessity for taking
appellee's land for borrow-pits, if there was such a
necessity, developed after the benefits were assessed and
after the improvement contemplated was begun.

The district contends that the taking of appellee's
land for borrow-pits was a tort which the undisputed
testimony proved was committed by the contractors, and
for which they, but not the district, were liable. To sup-
port this contention counsel for the district relies upon
the authority of *Board of Imp. of Sewer Dist. No. 2* v.

*Moreland,* 94 Ark. 380; *McCoy* v. *Board of Directors of Plum Bayou Dist.,* 95 Ark. 345; *Wood* v. *Drainage Dist. No. 2,* 110 Ark. 416. But appellant's contention cannot be sustained, because the district, as we have seen, was authorized under the act to take appellee's land for borrow-pits, if the necessity therefor existed, and it was an issue for the jury to determine, under the evidence, whether such necessity existed, and whether the district authorized the contractors to take the land in controversy for borrow-pits. These issues the court submitted to the jury under correct instructions. There was testimony to warrant the jury in finding that the district authorized the contractors to take the appellee's land for borrow-pits. The undisputed testimony shows that appellee's land was taken for the improvement contemplated in the creation of the district. While the district had the right to take it, it could not do so without just compensation to the appellee for the taking or for any damage sustained by him by reason of the building of the highway. Section 22, art. 2, Const. 1874. The law applicable to the facts as they might have been found by the jury is announced by this court in *Road Dist. No. 6* v. *Hall,* 140 Ark. 241-250, where, among other things, we said: "In the case at bar the land was taken after the assessment of benefits had been made, and pursuant to a section of the statute which gave the commissioners and the county court the right to change or alter the width of the road. The road was widened and the land in question was taken for that purpose. It was used in the construction of the road, and the road district was liable for the damages sustained by the landowner by reason of such taking, and, under the statute, the damages should be paid out of the funds of the district."

True, this action, as we have stated, was instituted both against the district and the contractors. The appellees obtained judgment against both, and an appeal was prayed for and granted as to both, but the contractors have not prosecuted their appeal to this court; at least, have not favored us with a brief setting forth their con-

tentions, and we take it they have abandoned their appeal; therefore the only question we are called on to decide is whether or not there is any error in the judgment in favor of the appellee against the appellant district, and we find there is none. The same is therefore affirmed.