BOOTH *v.* RACEY.

Opinion delivered June 28, 1926.

1. APPEAL AND ERROR—QUESTIONS RAISED.—Where plaintiff recovered judgment against a part only of the defendants, who have appealed, the only question involved is whether there is error in the judgment against them.

2. TRESPASS—DAMAGES.—Evidence *held* to sustain a verdict for $250 for digging borrow-pits outside of the right-of-way for a road without the landowner's consent.

3. TRESPASS—JUSTIFICATION—BURDEN OF PROOF.—It was not error to instruct the jury that road contractors digging borrow-pits outside of the right-of-way had the burden to show justification.

4. TRESPASS—JOINT TORT-FEASORS.—All persons participating in wrongfully digging borrow-pits outside of the right-of-way to secure dirt for a roadbed without the landowner's consent are liable as trespassers and joint tort-feasors.

5. TRIAL—ARGUMENT OF COUNSEL.—In an action for digging borrow-pits for road without the landowner's consent, an argument of plaintiff's counsel asking what one of the defendants would take to have a borrow-pit in his yard destroying the beauty of the home he built at a cost of probably $8,000 or $10,000 that he made from the profits of building the road, *held* not reversible error.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; affirmed.

*Eugene Cypert* and *Downie & Schoggen,* for appellant.

*J. N. Rachels,* for appellee.

WOOD, J. This action was brought by the appellee against the Arkansas-Missouri Highway District of White County, its commissioners, and the appellants as contractors for the building of the improvement contemplated by the creation of the district. He alleged in substance that, without his knowledge or consent, they entered upon his lands and dug six large pits, ranging from three to six feet deep, beyond and outside the right-of-way, and unlawfully used the dirt to build the roadbed of said road; that he was damaged by reason of their trespass in the sum of $2,000, for which he prayed judgment. The defendant denied the material allegations of the complaint.

The commissioners of the district and the appellants as contractors filed separate answers, in which all the material allegations of the complaint are denied except that the appellants were the contractors for the building of the improvement contemplated by the district. On the first trial, after the testimony was adduced and the instructions given, the jury returned a verdict in favor of the appellee against the appellants, the contractors, in

the sum of $200.. The court thereupon rendered judgment in favor of the district and its commissioners and against the appellee, and granted a new trial as between the appellee and the contractors, appellants here. On the second trial of the issue as between the appellants, contractors, and the appellee, the jury returned a verdict in favor of the appellee in the sum of $250. No appeal has been prosecuted by the appellee from the judgment rendered by the trial court in favor of the district and its commissioners. The appellants prosecute this appeal from the judgment in favor of the appellee against them.

1. Therefore the only question presented by this appeal is whether or not there is any error in the judgment in favor of the appellee against the appellants. At the conclusion of the testimony, the appellants prayed the court to instruct the jury to return a verdict in their favor, which prayer for instruction the court refused, to which ruling the appellants duly excepted.

The court, over the objection of appellants, gave to the jury the following instruction: ''This is a cause of action by Glen A. Racey against Booth Brothers and Harve Brown, in which he is seeking to recover damages on account of their wrongful appropriation of his property, and you are instructed that, under the law and the testimony of this case, the plaintiff should recover from the defendants, unless you further find that the defendants or some one in their behalf, or the law, relieved them from so doing. In other words, gentlemen of the jury, the borrow-pits and other alleged wrongful acts can be excused only by three methods known to the law, either by contract with Mr. Racey, or by just compensation, or by a lawful taking, and, the taking being admitted, in the absence of contract, the burden is on the defendants to show justification without compensation.''

The contract between the district and the appellants contains, among other provisions, the following: ''The land for borrow-pits will be furnished by the district. The contractor must restore in an acceptable manner all property, both public and private, which has

been damaged during the progress of the work. If there is not enough material within the right-of-way to complete the grading and bring the subgrade to the proper height and dimensions, the contractor shall furnish such additional material of a satisfactory quality as is necessary to secure the established grade and alignment for the roadway, embankments, etc. The land for 'borrow-pits' will be furnished by the district. The contractor shall notify the engineer in advance of the opening of any borrow-pits, so that it may be properly cross-sectioned, if the engineer so desires. Should the engineer so elect, he shall have the right to estimate borrow quantities from the fill or embankment, allowing ten per cent. for shrinkage. Any 'borrow' removed without notice to the engineer will not be estimated or paid for. The widening of cuts or other excavation within the limits of the roadway will not be under 'borrow.' Where material is borrowed the contractor shall not excavate the 'borrow-pits' below the general drainage level so as to form pockets or holes, nor shall he leave the banks from which he has taken the material rough or uneven in line. All 'borrow-pits' shall be connected up with the general drainage scheme of the improvement so as to insure their being properly drained. All boulders uncovered in the 'borrow-pits' shall be removed. 'Borrow' will not be required in rock.''

The testimony is exceedingly voluminous, and we will only set out such of it as we deem material. Suffice it to say the testimony on behalf of the appellee tended to support the allegations of his complaint and to warrant at least the amount of damages as returned by the verdict of the jury in his favor. He states in substance that no one applied to him for permission to dig the borrow-pits. There were six of these pits dug, and knolls were dug out into duck lakes. There was not a suitable place left for building a dwelling along the highway, as it was before the pits were dug. The property is damaged outside of the borrow-pits because the water accumulates and stands there. The pits were dug back

of the right-of-way to get dirt to build a dump. The witness gave permission for the right-of-way.

L. E. Mercer, one of the engineers for the district, testified that the right-of-way for the road was fifty feet wide. They got the dirt along the right-of-way and some from the borrow-pits. He never gave the contractors the right to dig borrow-pits along Mr. Racey's lands. The contractor took all of the fifty feet right-of-way except about five feet. If they had taken the dirt the full width of the right-of-way they would have had enough dirt to build the roadbed without digging borrow-pits, but would have had to build a deep ditch. They would not have had enough dirt in the right-of-way to build the roadbed by digging ditches of reasonable depth. They could not have done it and made the ditches.

Another engineer, an expert, testified, among other things, that he had examined the plans and specifications, and, according to these, it would not have been necessary to take any dirt outside of the right-of-way. Witness believed they could have found dirt enough on the right-of-way without the digging of the pits. There was plenty of dirt there for the height of the road as shown by the plans. The Racey land was damaged because it destroyed the best of the land along the highway. Pits are in an irregular condition, holding water, making an unsightly appearance and a breeding place for mosquitoes.

The secretary of the board of commissioners testified that the right-of-way along the Racey land was fifty feet wide. From 44 to 50 feet right-of-way was used in the construction of the road. Witness figured that there was about 1,500 yards of dirt, and that it could have been gotten out of the right-of-way. The board of directors did not give the contractors permission to build the borrow-pits. But witness understood that Blackshire, the engineer, did. The matter was not before the board before the pits were dug, but was before the board after they were dug.

There was testimony on behalf of the appellants to the effect that they completed the work, and that the same was accepted by the commissioners and final settlement made with them for the same; that the commissioners employed L. E. Mercer and Blackshire as engineers of the district, and gave them authority to superintend the road and build it; that, after the highway engineer and the engineers of the district had been over the road with the commissioners several times and pronounced the same finished, the contractors were released. The commissioners did not release the contractors from any liability they might be under to other people. The matter of digging the dirt out for the fills was left to the engineers by the commissioners. The foreman in charge of the work took the dirt from the land of Racey adjacent to the right-of-way under the authority of Blackshire, who was the engineer in charge of the work—he did what Blackshire said.

One of the contractors also testified that Blackshire was the engineer in charge of the work, and the taking of the dirt from the borrow-pits by the foreman was under the authority of this engineer. The witness did just what the engineer told him to do.

The testimony above set forth is sufficient to justify the ruling of the court in refusing to grant appellant's prayer for instruction No. 1, which would have directed the jury to find in appellant's favor. The court likewise did not err in granting the appellee's prayer for instruction No. 1 set out above. There was testimony from which the jury might have found that it was unnecessary to go beyond the limit of the right-of-way to get dirt for the construction of the improvement. In other words, that it was not necessary, in the construction of the improvement, to dig the borrow-pits on the appellee's land beyond the right-of-way, the digging of which caused the damage of which he complains. The testimony was sufficient to warrant the submission of the issue to the jury as to whether or not such digging of the borrow-pits was done for the convenience of the contractors.

Such being the case, it was no defense for the contractors that, under the terms of the contract, the land for the borrow-pits was to be furnished by the district. Such being the case, it was likewise no defense for the contractors that the digging of the unnecessary borrow-pits on appellee's land outside of the right-of-way was done under the direction of the engineer of the district and its commissioners, even if it could be said that under the evidence this was an undisputed fact. All who thus. participated in the wrongful and negligent injury and damage to appellee's property would be trespassers and joint tort-feasors and liable to him as such. *Foohey. Dredging Co.* v. *Mabin,* 118 Ark. 1, 4, 175 S. W. 400. See also *Wood* v. *Drainage Dist. No. 2,* 110 Ark. 416, 161 S. W. 1057.

This court, in the case of *North Arkansas Highway Improvement District No. 1* v. *Greer,* 163 Ark. 141, 259 S. W. 380, held that the district, under the facts there stated, was liable to the owner of the land for damages resulting to him in the building of borrow-pits by the contractors, where the taking of the land by the contractors was authorized by the district. But we did not hold in that case that the contractors would not likewise be liable as joint tort-feasors. The question of the liability of the contractors, under the facts there stated, was not passed upon by this court.

2. The attorney for the appellee, in his argument to the jury, made the following statement: "Gentlemen of the jury, when you come to consider those things, I want you to ask Henry Booth what he would take to have one of those borrow-pits in his yard, destroying the beauty of the home he built at a cost of probably eight or ten thousand dollars, that probably he made out of the profits of building this road." The appellant objected to this argument and asked the court to instruct the jury to disregard the same. The court overruled the objection, to which the appellants duly excepted. There is no reversible error in this argument. It was not the statement of any fact, but was merely the statement by the attorney of

grandiose and imaginary suppositions of his own that he would like for the jury to consider. It is not probable that a jury would be prejudiced or influenced against appellants by this argument. It was in the nature of a mere expression of the opinion of the attorney, and does not fall within the ban of nonpermissible and prejudicial arguments. The judgment is correct, and it is therefore affirmed.