LEWIS *v.* MAYS.

4-7574                                  186 S. W. 2d 178

Opinion delivered March 26, 1945.

*Opie Rogers,* for appellant.

*W. F. Reeves* and *N. J. Henley,* for appellee.

HOLT, J.   The appellants, Arthur Lewis and Ed Lewis, purchased from Joe Hardin all the pine timber which measured over eight inches in diameter on a 160-acre tract of land in Searcy county.   Appellee, Ed Mays, owned an adjoining tract, and on August 11, 1943, brought this suit in which he alleged that appellants, through their agents and employees, trespassed upon his land in the spring of 1941, cut and removed a large number of pine trees, that such trespass was willful and without authority, and prayed judgment for three times the value of the trees.   Appellants answered with a general denial. A jury trial resulted in a verdict for appellee, Mays, in the amount of $300.   Thereafter upon consideration of appellants' motion for a new trial in which, among other assignments of error, appellants alleged that the verdict

was excessive, the court reduced the amount of recovery to $185, and from the judgment comes this appeal.

There is little, if any, dispute as to the facts. Appellants, immediately following the purchase of the timber, entered into an oral contract with E. D. Bates to cut and remove the timber in question from the tract, to the foot of the mountain and load it on appellants' trucks. Appellants did not know the boundary lines around the said timber tract purchased from Hardin, but relied upon their employee, Bates, to determine the lines. Appellants did not have these lines run by a surveyor before entering upon the land and cutting and removing the timber in question. Appellants' employee, Bates, in cutting the timber for appellants, without authority and without the knowledge or consent of appellee, Mays, went over the line onto appellee's land and cut approximately twenty-eight pine trees which measured 6,167 board feet. The stumpage value was $10 per thousand. Some of this timber was cut on appellee's land approximately one quarter of a mile from the line.

From these substantial facts, we think the jury warranted in finding that appellants committed a willful trespass, and fully justified a verdict in favor of appellee and the judgment entered thereon, which, in effect, was for three times the stumpage value of the pine timber.

In the very recent case of *Peek* v. *Henderson, ante,* p. 238, 184 S. W. 2d 704, opinion delivered February 26, 1945, we said: "There are three separate measures of damage available to one who seeks to recover for timber taken from his land by a trespasser: Under § 8984 of Pope's Digest, the trespasser may, under certain circumstances, be required to pay double the value (at the stump) of the timber cut and removed; under § 1299 of Pope's Digest (and also under Act 29, of the General Assembly of Arkansas of 1937, re-enacting § 10320 of Crawford & Moses' Digest) the trespasser may, under circumstances set forth therein, be required to pay treble the value (at the stump) of the timber taken; and there is the rule of common law by which the owner of the land,

from which timber has been cut and removed by a willful trespasser, may recover his property after it has been manufactured into lumber, or the value thereof, if it cannot be found. *Kansas City Fibre Box Company* v. *F. Burkart Manufacturing Company,* 184 Ark. 704, 44 S. W. 2d 325.''

In the instant case, the court submitted the rule under §. 1299 of Pope's Digest on appellee's theory that . appellants were liable for treble damages and also the common law rule whereby the owner of land may recover the value of the timber unlawfully and willfully removed by a trespasser, in its improved state.

The court also gave to the jury, over appellants' objections, § 8998 of Pope's Digest as bearing upon the willfulness or innocence of the actions of appellants in cutting and removing the timber in question. Section 8998 provides: ''Before any person or persons who shall desire to cut and remove for purposes of * * * sawing into lumber any timber from any land in this State, he or they shall, unless the same has been surveyed and the boundaries thereof ascertained and known, before cutting and recovering (removing) the same, procure the county surveyor of the county in which such land may be situated and cause such land to be surveyed by said surveyor, and the metes and bounds of such land shall be marked and plainly established. And this act shall apply as well to persons purchasing timber rights from lands of this State as to landowners.''

As has been indicated, the facts here are undisputed that appellants, without knowing or ascertaining the boundary lines, proceeded without a survey to cut the timber in question. The court, therefore, did not err in giving this instruction.

While appellants criticize other instructions, it suffices to say that after carefully examining them, we think they correctly and very clearly stated the law as applied to the facts here.

Appellants, however, contended below and argue here, that the court erred in refusing to direct a verdict

in favor of appellants at the close of all the testimony for the reason "that the undisputed testimony showed that E. D. Bates was an independent contractor and on the further ground that if a tort had been committed against the plaintiff (appellee) the said tort was committed by E. D. Bates and that neither Ed Lewis nor Arthur Lewis participated, or aided, or abetted or directed or encouraged said tort."

The general rule applicable to the facts here is stated in § 85 of Cooley on Torts (4th Ed.) as follows: "All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor." (*Castleberry* v. *Mack, et al.*, 205 Ark. xix, 167 S. W. 2d 489), and in *Booth* v. *Racey*, 171 Ark. 561, 285 S. W. 29, this court said: "All who thus participated in the wrongful and negligent injury and damage to appellee's property would be trespassers and joint tort-feasors and liable to him as such."

The trial court refused,—and we think correctly,—to submit to the jury appellants' theory, *supra*, that Bates was an independent contractor, and therefore, they (appellants) could not be held liable for his acts. The question of independent contractor has no place in this case. Here, we are concerned with a trespass committed on appellee's property at the direction of appellants, by appellants' servant and employee, Bates, and it can make no difference whether Bates might have been acting as an independent contractor at the time of the trespass and his tortious act. In any event, appellants would be joint tort-feasors along with Bates and liable to appellee as such. The governing rule is stated in *27 American Jurisprudence*, under the chapter Independent Contractors, in § 40 at p. 518. "Section 40. Work Involving Trespass.—As a general rule, where a trespass is committed upon the rights or property of another, by the advice or direction of a defendant, it is wholly unimportant what contractual or other relation exists between the immediate agent of the wrong and the person sought to be charged. The latter cannot shelter himself under

the plea that the immediate wrongdoer did the act in execution of a contract, or that the agent came within the definition of an independent contractor as to the performance of the work in the execution of which the tortious act was committed."

The judgment is affirmed.