## CUMMER MFG. CO. v. COPELAND.
### No. 3951.

Court of Civil Appeals of Texas. Texarkana.
Jan. 30, 1931.

Rehearing Denied Feb. 5, 1931.

E. A. Tharp, of Mineola, Bozeman & Cathey, of Quitman, and Bufler, Price & Maynor, of Tyler, for appellant.

Jones & Jones of Mineola, for appellee.

SELLERS, J.

B. R. Copeland and Paul D. Smith owned the John Noland survey of 640 acres of land jointly, and some time in 1923 these parties secured a surveyor and established a division line between them. This line was plainly marked by the surveyor and was agreed upon by the parties as the dividing line between their property and said line constituted the south boundary line of Paul Smith's land and the north boundary line of B. R. Copeland's land. A short while after this line was established, Paul Smith sold the timber off his land to Cummer Manufacturing Company. In making the sale to Cummer Manufacturing Company, Paul Smith had all of his dealings with A. T. Morton, who acted as agent for the company. Before the sale was consummated, Paul Smith took A. T. Morton over the land and showed him a division line between Smith and Copeland. Later, two men, Bradshaw and Reese, contracted with Cummer Manufacturing Company to cut the timber from this land.

This suit was instituted by B. R. Copeland against the Cummer Manufacturing Company, alleging that said company had knowingly, wrongfully, and maliciously crossed the south boundary line of the Smith land and had cut certain timber on plaintiff's land, and in said suit seeks to recover the manufactured value of the timber so taken. The Cummer Manufacturing Company answered by general demurrer and general denial, and further set up that Paul Smith represented to A. T. Morton, agent for Cummer Manufacturing Company, that the boundary line between the land of Copeland and Smith was far enough south to include the timber cut within the boundaries of the Smith land.

The case was tried to a jury upon special issues, and upon the issues submitted as answered by the jury, the court entered judgment for Copeland for the sum of $610.

If the line as claimed by plaintiff was the correct line between the land of plaintiff and Paul Smith, then the first assignment of appellant is without merit. There was ample evidence before the jury to authorize the court in submitting to it the issue as to whether the defendant Cummer Manufacturing Company acted in good faith and under an honest belief that it has the legal right to appropriate the timber it caused to be cut from plaintiff's land. Ripy et al. v. Less et al., 55 Tex. Civ. App. 492, 118 S. W. 1084.

■ We cannot agree with appellant that if the timber in controversy was cut it was by independent contractors and therefore defendant Cummer Manufacturing Company was not liable. It appears from the record without contradiction that defendant Cummer Manufacturing Company, through its agents, directed the parties who cut the timber for it where to cut and that they cut no timber except such as they were directed to cut by the defendant Cummer Manufacturing Company. Under such circumstances as these, Cummer Manufacturing Company would be liable even though the parties who cut the timber were

independent contractors. Moore & Savage v. Kopplin et al. (Tex. Civ. App.) 135 S. W. 1033.

Appellant's third assignment is overruled. The question here raised has been so well settled by the authorities here cited that we think another discussion of it could serve no good purpose. Beauchamp v. Williams et al. (Tex. Civ. App.) 115 S. W. 130; Carter v. Clark & Boice Lbr. Co. (Tex. Civ. App.) 149 S. W. 278; Brooks v. Moss et al. (Tex. Com. App.) 212 S. W. 153.

It is true that plaintiff offered no testimony as to the value of baskets and crates manufactured by Cummer Manufacturing Company, but there is ample evidence in the record to show that the logs taken from the land in question were first manufactured by Cummer Manufacturing Company into lumber and then into crates and baskets, and there is also evidence as to the value of the lumber manufactured from the logs in question. We do not think that plaintiff could be required to prove the value of the crates and baskets manufactured from the lumber so long as he elected to recover the manufactured value of the timber into lumber and not into crates and baskets.

The first issue submitted by the court to the jury was as follows:

"Question No. 1: Did Cummer Manufacturing Company act in good faith and under an honest belief that it had a legal right to appropriate the timber it caused to be cut from the land lying South of the boundary line as claimed by plaintiff?"

The defendant Cummer Manufacturing Company at the proper time filed the following exceptions to the above issue:

"The defendant objects and excepts to Question No. 1 for the reason that it is framed in such a manner as to be on the weight of the evidence.

"B. Further exception to Question No. 1, it is fatally defective in this, that it assumes the defendant did cut the timber in question from plaintiff's land which is a controverted issue before the jury."

By a proper bill of exceptions the court's action in overruling the defendant's exception to said charge is brought before us for review. The witness A. T. Morton testified:

"I know where the timber is that the Cummer Manufacturing Company bought from Paul Smith. I also know where the Copeland land is. I recommended to the Cummer Manufacturing Company the purchase of that timber from Smith. I didn't buy it for them myself. I recommended it to the officials and they bought it. At that time Paul Smith showed me over the land. We went down there and went over it. He showed me some corners. He showed me about where the

South boundary was. He showed me the boundary down at the river on the south side. I knew George Cowan, a surveyor in this county. I was with him when he went down there to survey it after this controversy arose. I saw the line that he surveyed. I was over the line with him. At that time I don't think there was any timber cut South of the line that Paul Smith showed me on Copeland's land. I am not positive at this time. The Duck Creek Lumber Company was cutting in there at that time. There was a tree South of the Sabine river where he showed me a corner. The tree that we started from was on the South side of the river on the line that runs North and South. I am talking about where Mr. Cowan and I started. Paul Smith carried me down there and showed me the corner when he first showed it to me previous to the time Cowan and I were there. Paul Smith showed me a marked corner tree on the South bank of the river. I believe it was a pecan tree. There was where we started from and he told me there was where it commenced. We went right east from there down the river. That is where Paul Smith showed me. After this controversy came up and I went back there later with Mr. Cowan we went to this same place where Paul Smith pointed out the corner and then we went a few rods farther north and commenced at what we supposed to be a persimmon tree, across the river, and went on over a little ways, a little bit farther North, and started from that point. I stayed with Mr. Cowan while he was surveying the line through. We went over the old established line, the one Paul Smith and I went over. We didn't start at the same place that Mr. Smith showed me the line. It was a little bit farther North where Mr. Cowan started from. It was supposed to be a persimmon tree, I believe. We hunted for a persimmon tree but I don't think we found it. I think it was just a stob when we went there. It had rotted down, possibly, or been destroyed."

The witness T. A. Bradshaw, one of the parties employed in cutting the timber testified as follows:

"I didn't know that they sent the county surveyor of this county down there to locate the line after this was reported to them. Mr. Cowan ran the line. I didn't know he was county surveyor. I think that was the next day after I made this report. It was possibly the next day or two. * * * Miss Wheeler told me Mr. Cowan ran the line and to go ahead and get the timber. I wouldn't say that I did or didn't see Mr. Cowan down there. I went by the mark. There was another line run and I saw trees marked and stakes set up and cotton and paper tied on trees. * * * Miss Wheeler told me at first to cut this stuff and Mr. Morton would be out there and show me where this new line was and Mr. Morton came out, I think the next

day, and we started to cut the next day to this line."

After a very careful consideration of this record, and especially the evidence above quoted, we are unable to agree with appellee that the court was authorized in assuming that the line as claimed by plaintiff was a true line between plaintiff and Paul Smith, but, on the contrary, we are of the opinion that the court should have submitted an issue to the jury covering this phase of the case, and the failure to do so was error. At the time the timber was cut there can be no doubt but that there were two lines across this tract of land, one where the hands first cut the timber to, and the other where they were later ordered to cut to, and it was a question for the jury to say which of the lines is the true one.

Because of the error indicated, the judgment of the trial court is reversed, and the cause remanded.