Argued May 5, affirmed July 29, 1959

# KLEMGARD ET AL *v.* WADE SEED COMPANY

342 P. 2d 757

*Carl G. Helm, Jr.*, La Grande, argued the cause for appellants. With him on the brief were Clifton D. Royal, Elgin, Claude Irwin, Pullman, Washington, and Helm & Neely, La Grande, Oregon.

*S. H. Burleigh*, La Grande, argued the cause for the respondent. On the brief were Burleigh & Carey, La Grande.

Before McALLISTER, Chief Justice, ROSSMAN, LUSK, WARNER, PERRY, CRAWFORD and MILLARD, Justices.

ROSSMAN, J.

This is an appeal by the plaintiffs from a judgment which the circuit court entered in favor of the defend-

ant after the jury had returned a verdict for that party. The plaintiffs, two in number, constitute a partnership which is engaged in the business of buying and selling seed peas. The defendant, which is a corporation, grows, sells and cleans seed peas. In 1956 the plaintiffs delivered to the defendant 31,220 pounds of seed peas and the defendant agreed to use some of that quantity in planting land which it held and thereby raise a crop of seed peas and deliver the remainder to other growers who would likewise raise crops of seed peas. In turn, defendant, as the plaintiffs' agent, was to purchase the crops of seed peas thus grown. October 3, 1956, the plaintiffs advanced to the defendant the sum of $8,500 to be expended by the defendant, as the plaintiffs' agent, (1) in the purchase of the crops of the growers who had received the 31,220 pounds of seed peas which we have mentioned and (2) to defray the defendant's expenses in cleaning the harvested crops and performing incidental services. When the defendant purchased the crops from the growers there was to be credited upon the purchase price the value of the seed peas that had been delivered to them and also the amounts of the advances that they had received out of the aforementioned sum of $8,500.

After the crops had been harvested controversies arose between the plaintiffs and the defendant as to (1) the disposition which the defendant had made of the $8,500, (2) the grade of some of the peas which had been harvested and (3) the charges which the defendant made for its services in cleaning the peas. Presently this action was filed which was based upon charges that: (1) the defendant did not pay the entire sum of $8,500 to growers and refused to return it to the plaintiffs upon the latter's demand, (2) the plaintiffs au-

thorized the defendant to sell 7,200 pounds of peas and that it did so for the sum of $468 but refused to pay that sum to the plaintiffs and (3) the plaintiffs authorized the defendant to sell 3,445 pounds of screenings for $64.35 and that it did so but refused to pay that sum to the plaintiffs. The complaint acknowledged that the defendant was entitled to a credit of $4,641.98 on the sum of $8,500 which the plaintiff had advanced to it. The plaintiffs sought judgment in the sums of $3,858.02 ($8,500.00 less $4,641.98), $468.00 and $64.35.

The answer set forth the disposition which the defendant says that it made of the $8,500 and averred that nothing was due to the plaintiffs.

The plaintiffs present nine assignments of error.

■ The first assignment of error is based upon a ruling which sustained the defendant's objection to the admissibility of a paper entitled Purchase Report which the plaintiffs sought to have admitted. The Purchase Report was a printed sheet prepared by the plaintiffs with various printed headings adjacent to which there was space for the making of entries. Seemingly, the Purchase Report came in book form so that the plaintiffs' representative, after making the entries, could tear a copy from the book and deliver it to the other party to the transaction. In the present instance the Purchase Report with its entries assumed the form of a memorandum of the receipt by the defendant of the seed peas aforementioned and contained some pertinent data or figures pertaining to the peas and their delivery to the defendant. The entries were made by E. A. Dumas, one of the two plaintiffs. When he made the entries Dumas used three of the forms and by placing sheets of carbon paper between them, both as he wrote the entries and as he and the defendant's

manager signed, produced triplicate originals. After the parties had signed, Dumas handed one of the triplicates to the defendant's manager and kept the other two. When the plaintiffs offered in evidence one of the triplicates which Dumas had retained the defendant produced its triplicate original and thereupon by comparison of the two papers it developed that the plaintiffs' triplicate contained a paragraph written by Dumas that was not upon the defendant's. It was that paragraph which the plaintiffs most desired to have introduced in evidence. An explanation given by the plaintiffs indicated that after Dumas had handed to the defendant's manager one of the triplicate originals some more discussion took place between the two men and thereupon Dumas wrote its essence upon his triplicate original but not upon the defendant's. We have mentioned the fact that before that writing was done both Dumas and defendant's manager had signed the paper. The defendant, after objecting to the receipt in evidence of the plaintiffs' triplicate original, expressed a willingness for the triplicate which it (defendant) possessed to be received in evidence. The plaintiffs did not contest the verity of the triplicate which the defendant produced, and conceded that the triplicate which the plaintiffs offered contained entries which Dumas wrote after the defendant had signed it. The plaintiffs rejected the defendant's proposal.

We think that it is evident that no error was committed when the challenged ruling was made. The unilateral entry upon the plaintiffs' triplicate original which was written by Dumas after the defendant had signed the paper did not ingraft into the agreement Dumas' writing. The paragraph which Dumas wrote upon his triplicate was his own personal memrandum

but was not a part of the parties' undertaking. This assignment of error is without merit.

■ The second assignment of error is based upon a ruling which permitted the defendant to introduce as evidence the original complaint filed by the plaintiffs. That pleading had been superseded by three later versions of the plaintiffs' cause of action in the form of Amended, First Amended and Second Amended Complaints. The objection to the tendered abandoned pleading (original complaint) was:

> "It isn't admissible because of an Amended Complaint being filed previous to that time, and not documentary evidence of any sort."

Defendant's counsel stated that he offered the pleading as "impeaching the testimony of the plaintiff and showing that their claims at that time were entirely different than the claim they are making now."

A previous paragraph of this opinion sets forth the sums for which the plaintiffs sought judgment in the present complaint (Second Amended Complaint). The original complaint, which is the subject matter of the assignment of error now under consideration, gave a somewhat different version of plaintiffs' cause of action and, after crediting the defendant with $6,297.32 sought judgment for $3,001.34, $1,389.03 less than the Second Amended Complaint.

Although a pleading loses its status as such when it is superseded by an amended one, it never vanishes from the files. If it contains something adverse to the pleader's position it is always available for introduction as an item of evidence. The observation just made is so well established in this state that it is unnecessary to cite authorities. The second assignment of error is clearly lacking in merit.

Assignments of Error No. 3, 3-A, 3-B, 3-C and 3-D

are consolidated in the plaintiffs' (appellants) brief for presentation in conjoined form and, accordingly, we will set forth our disposition of them in similar manner.

■ The main contention which is common to the above group of assignments of error is whether the trial judge ruled erroneously when he held that evidence was inadmissible which was intended to show that the methods employed by the defendant in cleaning the peas was faulty and inadequate. The ruling was based largely upon the fact that the plaintiffs' pleading did not allege faulty, improper, negligent or substandard cleaning. The complaint (Second Amended Complaint) mentioned the matter of cleaning and alleged that the defendant was entitled to a credit of $138.88 for "cleaning peas supplied by Klemgard Pea Processing Company," and to another credit of $361.20 in part for "clipper cleaning" another lot of peas. It made no intimation that any of the cleaning was improperly performed. The answer referred not fewer than 13 times to the cleaning services which the defendant had performed. It mentioned the amounts in dollars and cents which the defendant had charged for the services it rendered upon some of the peas, and set forth the manner in which the charges for some of its other cleaning services were satisfied by the delivery to it of peas. The reply, after alleging an agreement which it averred was formed April 12, 1957, stated that under that agreement:

"* * * 61,160 lbs. of said peas would be set over to Wade Seed Co. in payment of the cleaning bagging and storing of said entire lot of 202,300 lbs. of peas including the cost of the bags used in bagging the 202,300 lbs. of seed peas as his own property and therefore defendant, Wade Seed Co.,

is entitled to cleaning and bagging pea charges (including cost of bags) on only 90,300 lbs. of seed peas instead of 290,600 lbs. * * *."

The reply made no claim that the defendant's cleaning services were improper or below customary standard.

In the plaintiffs' case in chief no intimation was made that the defendant's cleaning services were improperly performed. Likewise, no charge of that kind came forth when the defense was presented. However, while the plaintiff, Mr. Dumas, was testifying upon rebuttal he swore that the cleaning work performed by the defendant was "a very poor job" and then proceeded to criticize the defendant's work. At that point defendant's counsel stated:

"* * * there is no issue in this case concerning a failure to clean these peas properly. If they make this claim, they should have put it in their pleadings. * * * It's the first time we have had any notice of that kind. We never came here prepared to try any issue whether those peas were properly cleaned. This is the first time we have ever heard any claim to the contrary."

Defendant's counsel also objected repeatedly that testimony concerning the quality of the cleaning work, if otherwise admissible, should have been presented as a part of plaintiffs' case in chief and not upon rebuttal. At that point the trial judge heard at length from counsel concerning the admissibility of testimony showing that the defendant performed the cleaning services in a substandard manner, and eventually ruled that evidence to that effect was not admissible under the pleadings. He ruled, however, that the plaintiffs could present evidence as to the reasonable value of cleaning services and likewise evidence, if they possessed any, that some of the peas were not cleaned.

At that juncture the plaintiffs made no effort to amend their pleadings. Nor did they make an offer of proof.

The plaintiffs' (appellants) brief fails to comply with that part of Rule 16 of the Rules of Procedure adopted by this court which reads as follows:

> "The court on examination of witness ——— erred in sustaining (or failing to sustain) objection to the following question: Set forth question, the objection made, the answer given, if any, and offer of proof, if any, all haec verba * * *."

In this case many of the questions which were put to the witnesses became engrossed in a maze of objections, arguments and colloquies. In some instances, including the one now under analysis, the arguments ran on at great length. When a ruling was made the disputation was not ended—the ruling became the springboard for a new line of argument. The failure to have complied with the above rule of our court renders it difficult in this case to determine specifically the matter challenged by the objection.

We think that the rulings above mentioned were proper. The plaintiffs were given opportunity to present evidence showing the value of the cleaning services which were rendered, and were prevented only from showing upon rebuttal that the defendant did not perform its services in harmony with common standards. As we have seen, the plaintiffs' pleadings gave the defendant no notice that evidence of that kind would be presented.

We believe that Assignments of Error No. 3, 3-A, 3-B, 3-C and 3-D are without merit.

■ The fourth assignment of error is based upon a ruling which struck from the record testimony given by Mr. Clifton Royal, a witness for the plaintiffs, under

direct examination. The testimony thus stricken declared that the market price of peas on a day when a test which Royal mentioned was made of some peas was two and three-quarters cents a pound. Mr. Royal is an attorney whose office is in Elgin. If he grows peas or deals in them the fact was not divulged by him. Mr. Royal is the plaintiffs' counsel and as such instituted this case. When he was asked:

"Q And what was that [price]? Do you know what the market price was at the time * * *?"

Defendant's counsel interrupted by declaring: "If he knows of his own knowledge." Mr. Royal, without saying that he knew of his own knowledge the price of peas on the day of the test, answered: "It was two and three-fourths cents a pound." Upon cross examination the following developed:

"Q How do you know the price was two and three-quarters cents then for No. 3's?

"A I was told by, among other people, Mr. Dumas what the value—

"Q Oh, you was testifying as to what somebody told you, were you?

"A Well, that's the only way that—

"Q You don't know what day the test was made so you don't know what the price was on that date, and you don't know what the price was on other days, do you, except by hearsay?

"MR. IRWIN: If the Court please, I'm going to have to object to this line of cross examination on the ground that the cross examination is not proper and it's not relevant to the direct examination, and the direct examination certainly wasn't objected to at the time it went in. Now, his objection, or his statement is that it's hearsay and market value, we all know, is a matter of hearsay as to what it is.

"THE COURT: Well, the objection is over-

ruled. I mean, it's proper cross examination, however.

"Q (By Mr. Burleigh) So now you don't know what the price was at the day the test was made because you don't know when the test was made, do you?

"A I don't know the exact date, no.

"Q So not knowing the date, you can't know what the price was except by what somebody told you, is that right?

"A I saw the inspection slip that was made on that and it showed what the grade was and at that time I inquired what the—

"Q When did you see that?

"A I don't remember exactly.

"Q You don't remember who showed it to you?

"A I don't remember that.

"Q You don't remember that.

"MR. BURLEIGH: If the Court pleases, we move to strike his testimony as to the price of peas under this agreement for the reason that his testimony—own testimony shows he didn't know anything about—

"MR. IRWIN: It went in without objection at the time, your Honor. How, he's—

"MR. BURLEIGH: There wasn't any grounds for objection at that time. He was testifying as if he knew something.

"THE COURT: Well, the motion will be allowed and the testimony as to the price of the peas as testified to as of the date of the inspection will be stricken and the jury will be instructed to disregard this testimony of this witness in respect to that."

We think that it is evident from the foregoing that Mr. Royal had no familiarity with the market price of peas that could have enabled him to testify upon that

subject. His information apparently came from Mr. Dumas, one of the two plaintiffs who himself gave much of the testimony that is in the record. If Mr. Dumas' knowledge upon the subject of market price was to come into the record he, and not Mr. Royal, should have been the witness. After Royal's answer was stricken no effort was made to question Dumas on the subject. In challenging the contested ruling the plaintiffs argue:

"* * * There was nothing in the record showing this lack of knowledge on the part of the witness * * *."

However, it will be seen from the excerpt of the record that we have just quoted that the plaintiffs objected when the defendant sought to show on cross examination that Royal lacked knowledge of market price.

The trial judge, after hearing the testimony, sustained the motion to strike. In our opinion he was fully warranted in making the ruling. The fourth assignment of error is without merit.

■ The fifth assignment of error attempts to challenge the denial of the plaintiffs' motion for a new trial. The motion was based upon the same rulings which constitute the bases of the assignments of error which are considered in the preceding paragraphs of this opinion. It submits nothing which occurred after the close of the trial, such as new evidence discovered after the trial, or misconduct of a juror of which the party was unaware until after the discharge of the jury. That being so, this assignment of error is a nullity and presents nothing for consideration on appeal: *Shearer v. Lantz*, 210 Or 632, 312 P2d 581; *Sullivan v. Carpenter*, 184 Or 485, 199 P2d 655; and *Benson v. Birch*, 139 Or 459, 10 P2d 1050.

Possibly we should add that counsel who argued

this case upon appeal for the plaintiffs did not try the case in the circuit court. We believe that the trial judge afforded the plaintiffs opportunity to have presented all of their evidence. Unfortunately due to the fact that evidence which should have been presented in the case in chief was withheld by the plaintiffs until rebuttal, the case became involved in a plethora of objections, arguments and repeated colloguies between court and counsel. Those happenings obscured the rulings, but the latter nevertheless afforded the plaintiffs fair opportunity to have presented their case.

The judgment of the circuit court is affirmed.

CRAWFORD, J., sat but did not participate in the decision of this case.