Motions submitted January 4, motion of respondent denied, motion of appellants allowed January 25, 1961; argued September 7, 1961, affirmed February 7, petition for rehearing denied March 13, 1962

# GORDON CREEK TREE FARMS, INC. *v.*
## LAYNE ET AL, HILLYARD ET AL
### 358 P. 2d 1062
### 368 P. 2d 737

David W. Young, Portland, for appellants.
Bruce M. Hall, Portland, for respondent.

PER CURIAM.

This case is before the court on motions filed by the parties arising out of the failure of the appellants to comply with a provision of the statutes which prescribe the method of making up the record on appeal to this court.

The question is governed by the new code of appellate procedure which went into effect January 1, 1960. ORS 19.023 to 19.190. The bill of exceptions is

abolished by the new code, ORS 19.114, and the procedure so far as here pertinent is as follows:

At the time of filing the notice of appeal, the appellant shall file "A designation of such parts of the proceedings and exhibits as he desires to be included in the record in addition to the trial court file."[1] 19.074(2) (a) If the appellant designates less than all the testimony and all the exhibits, he must at the same time serve and file "a plain and concise statement of the points on which he intends to rely" and in such a case "the appellant may rely on no other points than those set forth in such statement." 19.074 (2) (b) (c). "Within 10 days after the filing of the designation and the statement of points, if any, any other party may serve and file a designation of additional parts of the proceedings and exhibits to be included in the record." 19.074 (3). "The reporter shall prepare a transcript of such parts of the proceedings as are designated" as theretofore provided. 19.074 (4).

ORS 19.074 (1) reads:

"(1) In every case, the trial court file shall be transmitted to the Supreme Court as part of the record. Unless a transcript or narrative statement in lieu of a transcript is prepared as provided in ORS 19.074 to 19.098, the record shall consist of the trial court file alone."

Provisions for settling the transcript are found in ORS 19.078, as follows: The transcript is required

---

[1] ORS 19.005 contains the following definitions:

"(3) 'Trial court file' means all the original papers filed in the trial court whether before or after judgment, including but not limited to the summons and proof of service thereof, pleadings, demurrers, motions, affidavits, depositions, stipulations, orders, the judgment, the notice of appeal and the undertaking on appeal.

"(4) 'Transcript' means the transcript of the court reporter's report as provided in ORS 8.340, 8.350, and 8.360.

"(5) 'Record' or 'record of the case' means the trial court file and any transcript, narrative statement and exhibits."

to be certified by the reporter or the trial judge and filed with the clerk of the trial court within thirty days after filing the notice of appeal. (1) With an exception not now pertinent, the appellant must serve the respondent with a copy of the transcript. (2). "(3) Within ten days after the transcript is filed, any party may move the trial court for an order to correct any errors appearing in the transcript or, where the interests of justice require, to have additional parts of the proceedings included in the transcript. Thereupon, the trial court shall direct the making of such corrections and the adding of such matter as may be appropriate and shall fix the time within which such corrections or additions shall be made.

"(4) Promptly after the expiration of ten days after the filing of the transcript, or the denial of a motion to correct or add to the transcript, or upon the making of such corrections or additions as may be ordered, whichever last occurs, the appellant shall, and any other party may, make application to the trial court for an order settling the transcript. The trial court shall enter such order and the clerk shall send a copy thereof to the clerk of the Supreme Court at Salem."

The appellants in this case did not at the time of filing their notice of appeal serve or file any designation of such parts of the proceedings and exhibits as they desired to be included in the record in addition to the trial court file. Neither did they secure or attempt to secure an extension of time for that purpose as they might have done under ORS 19.094. Nevertheless, on December 2, two weeks after filing the notice of appeal, they served and filed a designation of the entire transcript of testimony and proceedings and all the exhibits.

■ ORS 19.078 clearly means that, unless the designation is served and filed at the time fixed by the statute or within a proper extension of such time, the record shall consist of the trial court file alone. That must be the conclusion here unless this court has the power to and should relieve from the omission.

The transcript was filed on December 5, within the time prescribed by law, and on December 21, 1960, the trial judge on motion of the appellants entered an order settling the transcript. The order recites the objection of the respondent based on appellants' failure to make a timely designation, and further recites that the order is without prejudice to the right of the respondent to move for a dismissal of the appeal on that ground or any other available to it.

On the same day, however, the judge allowed a motion of the respondent to strike from the record the designation served and filed by the appellants.

On December 22, the appellants filed in this court a motion for an order striking the last mentioned order and suggesting that this court either on its own motion or on the motion of the appellants enter an order "confirming the entry of the aforesaid designation in the records in the above entitled cause."

On December 23, the respondent countered by filing a motion for an order affirming the order of the circuit court striking the designation and a further order limiting the scope of the appeal to a consideration of the trial court file only.

■ It should be observed in passing that the trial judge had no jurisdiction to strike the appellants' designation. Since it was not filed in time, he might, for that reason, have refused to settle the transcript. When a notice of appeal has been served and filed, the Supreme Court acquires jurisdiction of the appeal but

the trial court "shall have such powers in connection with the appeal as are conferred upon it by law." ORS 19.033(1). The trial court has certain duties and powers in connection with the undertaking on appeal, ORS 19.038, 19.040, and, as we have seen, with the preparation and settlement of the transcript. ORS 19.078. It may grant limited extensions of time for the performance of any act in connection with the preparation of the record. ORS 19.094. Under certain circumstances, it may dismiss an appeal. ORS 19.-108(2). Perhaps it has other powers, but the power to strike a designation because it is not served and filed in time is not one of them.

The order striking the designation may therefore be ignored and the respondent's motion to "affirm" the order will be denied.

The appellants' motion includes a recital that the appellants are "uncertain" as to whether ORS 19.033 or 19.108 applies. The motion is supported by an affidavit of one of the attorneys for the appellants setting forth facts by way of excuse for the appellants' failure to file a timely designation. These facts are, in substance, that there was a delay in delivery of the transcript by the court reporter as the result of which the attorney was unable to determine by the time the notice of appeal was filed whether it was necessary to bring all the testimony to this court for a proper prosecution of the appeal or whether a portion of the testimony would suffice, and "the press of legal and personal affairs."

■ We are of the opinion that the motion of the appellants should be treated as an application to be relieved from their default. Such an application is not authorized by ORS 19.108(1) which empowers this court to have a defective record corrected. This sec-

tion is in substance the grant of the old "diminution of the record" power. It is a substitute for former ORS 19.110. See *Leavengood v. McGee*, 50 Or 233, 236, 91 P 453.

If this court has the authority to relieve from the appellants' default, that authority is to be found in ORS 19.033(3), which reads:

"(3) After the Supreme Court has acquired jurisdiction of the cause, the omission of a party to perform any of the acts required in connection with an appeal, or to perform such acts within the time required, shall be cause for dismissal of the appeal. In the event of such omission, the Supreme Court, on motion of the respondent or, after notice, on its own motion, may dismiss the appeal if in its judgment the omission is without reasonable excuse or it may permit the party responsible for the omission to rectify the omission, by amendment or otherwise, on such terms and within such time as may be just."

■■ Under the former procedure, if a bill of exceptions was not presented within the statutory time, this court was powerless to grant relief and the appellant lost the right to bring the testimony here and have a review on the merits. This was a source of dissatisfaction to the profession, to litigants and to the court. See *Williams v. Ragan*, 174 Or 328, 143 P2d 209; *State v. Reyes*, 209 Or 595, 597-607, 303 P2d 519, 304 P2d 446, 308 P2d 182. One of the purposes of enactment of the new appellate code was the amelioration of this situation in accordance with the latter-day view that the procedural sins of attorneys should not necessarily be visited upon their clients. As we construe ORS 19.-033(3), it has given the Supreme Court plenary power to relieve from an untimely performance of any of the required acts except only the serving and filing of the

notice of appeal which, it is expressly provided, is jurisdictional and may not be waived or extended. 19.033(2). Relief may be granted in the court's discretion even though there be no "reasonable excuse" for the omission. The court *should* grant relief if there is a reasonable excuse; it *may* do so in the absence of such an excuse if it deems the ruling in the interest of justice. This construction seems to accord with that of the Legislative Interim Committee which drafted and sponsored the measure and is fairly within the language of the section. See Report of Legislative Interim Committee on Judicial Administration, Part I, January 1, 1959, p. 77.

■ The facts stated in the affidavit of the attorney for the appellants do not constitute a "reasonable excuse." If the attorney was unable to determine how much of the testimony he needed for the purposes of the appeal until he had received a copy of the testimony, he could and should have applied to the circuit court for an extension of the time under ORS 19.094. The lawyer's stock excuse, "the press of legal and personal affairs", is scarcely to be taken seriously.

Nevertheless, we exercise our discretion to grant the appellants the relief sought. We are moved to do so because the transcript was filed within the time specified in the statute and so there has been no undue delay in the prosecution of the appeal, and because the present code of appellate procedure is a comparatively new law. The designation, therefore, will be treated as though it had been timely filed.

Having said this much, we hasten to add that this ruling is not to be taken as an invitation to attorneys to disregard the statute or to hold its mandatory provisions lightly. They are intended to be strictly followed and the court expects members of the profession

to govern themselves accordingly. Unlike the former statutes prescribing appellate procedure, the provisions of the new code are simple, expressed with admirable clarity and are easily complied with. It is difficult to conceive of an adequate excuse for an attorney to misunderstand their meaning or to fail to follow their directions.

The respondent's motion is denied. The appellants' motion is allowed.

## ON THE MERITS

BARNETT H. GOLDSTEIN, Judge Pro Tem.

*Bert E. Joachims* and *David W. Young,* Portland, argued the cause for appellants. On the briefs were Klosterman & Joachims and Weiser, Bowles & Young, Portland.

*Bruce M. Hall,* Portland, argued the cause for respondent. On the brief were Bonyhadi & Hall, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY and LUSK, Justices.

WARNER, J.

This is an action for damages brought by the plaintiff Gordon Creek Tree Farms, Inc., hereinafter called "Gordon," for trespass and the severance and removal of trees from its timber farm in the Larch Mountain area of Multnomah County, Oregon.

The defendants John Hillyard and John Harris are copartners. They held a contract with the U. S. Bureau of Land Management for the removal of timber from a section of land adjacent to the timber farm. To accomplish their purpose, they first contracted with defendant Calvin Harmon as their logger and later with defendants W. S. Layne and Gail Layne, his son. An order of involuntary nonsuit was allowed as to defendant Harmon.

The case was tried by the trial judge without a jury. The court found that defendants Layne, while serving defendants Hillyard and Harris, had wilfully and wantonly trespassed upon plaintiff's land and removed therefrom timber of the value of $4,615.20.

Relying on ORS 105.815, the court entered judgment against the Laynes and Hillyard and Harris for double that amount. From that judgment, Hillyard and Harris, alone, appeal. We will from this point refer to Hillyard and Harris as "the defendants" and when necessary, refer to the defendants Layne as "the Laynes."

The following facts are not disputed. Plaintiff Gordon was the owner and in possession of timbered real property in Sections 2 and 12, Township 1 South, Range 5 East, and Section 36, Township 1 North, Range 5 East, W.M., in Multnomah County, Oregon. The alleged trespasses occurred during the years 1958 and 1959.

In January, 1957, the U. S. Bureau of Land Management entered into a contract with the defendants for the sale of certain timber in Section 1, Township 1 South, Range 5 East, W.M., in the Mt. Hood National Forest. Their cutting rights expired February 25, 1959, with a year thereafter to remove any severed timber from the contract area. The boundary lines of Sections 36 and 12 connect with the north and south boundary lines of Section 1.

Harmon intermittently logged for the defendants from April, 1957, until October 27, 1958. The Laynes, who started immediately after Harmon left, were continuously active until sometime in October or November, 1959. The trespasses for which Gordon recovered judgment occurred during the period of the Laynes' activity and explains why a motion for nonsuit as to defendant Harmon was allowed.

The appellants concede that there was some cutting on Sections 12 and 36.

The appellants assign 10 items of alleged error. In order of the defendants' presentation, the first re-

lates to the court's denial of their motions for nonsuit and directed verdict. The second assignment represents that the findings of fact do not support the judgment. The seven following assignments rest upon the court's adverse rulings on their objections to its findings of fact or refusal to make certain findings requested by them. The tenth and last assignment is addressed to the denial of defendants' motion to set aside the judgment and grant a new trial.

We first look to the defendants' representations that error was committed in denying their motions for nonsuit and directed verdict.

The grounds therefor are the same in both motions: first, that there is no evidence of trespass committed by the four defendants; and, second, that there is no evidence of a relationship between Hillyard and Harris and the Laynes which would cast upon the first two defendants named any legal responsibility for the acts of the Laynes. At this juncture we note that the plaintiff Gordon did not plead any particular legal relationship between the Laynes and the defendants; that is, whether the Laynes were employees of defendants or labored as independent contractors.

In arriving at our conclusion with reference to this assignment our review of the record has been governed by the following rules.

The trial judge made findings of fact on both points relied upon by the defendants, but contrary to their contentions. Under the circumstances, the findings have the effect of a verdict. They can not be set aside unless this court is of the opinion that the findings are not supported by any competent, substantial evidence, as distinguished from the task of weighing the evidence. *Burke Machinery Co. v. Copen-*

*hagen,* 138 Or 314, 316, 6 P2d 886, and cases there cited.

We said in *Sexton v. Kelly,* 185 Or 1, 12, 200 P2d 950:

> "It is not the function of this court in law actions to pass on the credibility of witnesses, to weigh the evidence, or to resolve conflicting testimony. These are matters for the determination of the Circuit Court. It is, however, the province of this court, when properly presented, to decide whether there is substantial evidence to support the findings of the court or the verdict of the jury, as the case may be. * * *"

■■ It is settled that whenever a defendant has not rested upon a motion for nonsuit, but proceeds instead to adduce evidence in support of his own contentions, such evidence may be considered in order to sustain a recovery by the plaintiff. We have repeatedly held that we will not reverse a ruling of the trial court denying a nonsuit whenever upon the whole case, as presented by both parties, the record shows sufficient substantial evidence to take the case to the jury. *Johnson v. Underwood,* 102 Or 680, 688, 203 P 879, and cases there cited; *Berkshire v. Harem,* 181 Or 42, 75, 178 P2d 133; *Buckles, Exec. v. Continental Cas. Co.,* 197 Or 128, 133, 251 P2d 476, 252 P2d 184.

■ We also take note that when giving consideration to a motion for nonsuit or one for a directed verdict, the evidence must be viewed in the light most favorable to plaintiff and accord plaintiff the benefit of every reasonable inference which may be drawn from the evidence and every intendment is in his favor. *Buckles, Exec. v. Continental Cas. Co.,* supra (197 Or at 134); *Keys v. Griffith,* 153 Or 190, 196, 55 P2d 15, and cases there cited.

Under the circumstances we have treated the court's denial of both motions together.

We have given careful attention to the long record of testimony and the 58 exhibits which were introduced, as well as the earnest arguments of the defendants in support of their contentions of existent error. We have also given consideration to the thoughtful and extended opinion of the able trial judge who had the additional advantage of being able to evaluate the credibility of the several witnesses. As a result we are persuaded that the court did not err in denying the motions which are the subject of the first assignment and that its findings to which the defendants object were supported by substantial evidence. We have not, however, set down our step-by-step analysis of the record. To do so would unduly extend this opinion without any advantage to the profession or the parties litigant.

It is sufficient to say that there was ample proof of trespass and substantial evidence warranting a holding which cast upon Hillyard and Harris liability as cotrespassers.

Contrary to the court's finding that defendants Layne were agents and employees of Hillyard and Harris, the defendants argue that the Laynes were independent contractors. Relying on that premise, appellants conclude that they are not chargeable with the trespass.

The question whether the Laynes were employees and agents or independent contractors is a close one and made more difficult by the absence of any writing which might be of assistance in its resolution. However, even if it be assumed that the Laynes were independent contractors, it would not, under the cir-

220

cumstances present in this case, exonerate the defendants Hillyard and Harris from liability.

The general rule that an employer is not liable for the torts of an independent contractor or his servants is subject to numerous qualifications and exceptions 57 CJS 353, Master and Servant § 584. It is well settled that an employer who orders work to be performed from which, in the natural course of things, injurious consequences must be expected to arise unless means are adopted by which such consequences may be prevented, is bound to see that necessary precautions are taken to prevent injury and such person can not by employing some other person relieve himself of his liability to do what is necessary to prevent the work from becoming wrongful. *Law v. Phillips,* 136 W Va 761, 68 SE2d 452, 33 ALR2d 95, 105; 27 Am Jur 515, Independent Contractors § 38; Prosser, Torts (2d ed), 358, § 64. The foregoing rule is sufficiently comprehensive to embrace not only work which is regarded as "inherently" or "intrinsically dangerous," but also work which will in the ordinary course of events occasion injury to others if certain precautions are omitted, but which may as a general rule be safely executed if such precautions are taken. 27 Am Jur, supra, at 315-316.

A burden rests upon all to avoid trespassing upon the property of others. The weight of this burden is enhanced by the few defenses available to one so charged. "When one commits a trespass upon the * * * property of another," says Am Jur (Vol 52, Trespass, 864, § 35), "whether intentional or unintentional, there are few defenses which will excuse and relieve him from liability."

This burden to avoid trespass is especially constant between adjoining landowners or parties in

possession of abutting parcels. As between them it is a mutual and reciprocal duty. The law permits every person to make use of his property as he will, provided he uses it in such a manner as not to injure others. 1 Am Jur 505, Adjoining Landowners, § 3; 2 CJS 6, Adjoining Landowners § 1. We have held that a party in the exercise of a right on his own land which involves danger to the property of his neighbor is bound to provide against such by the exercise of all reasonable prudence and care. *Hummell v. Terrace Co.,* 20 Or 401, 26 P 277 (1891).

But as an adjacent property owner, plaintiff Gordon was not required to maintain a constant watch lest nearby logging operations invade his property. *Kinzua Lumber Co. v. Daggett,* 203 Or 585, 606, 281 P2d 221 (1955).

In accord with the general rule, neither a mistake of law nor one of fact constitutes an entry any less a trespass. 52 Am Jur, supra, at 845. Nor does ignorance excuse an entry upon the land of another; hence, one can not defend by showing a lack of knowledge of the boundary lines (*Boulton v. Telfer,* 52 Idaho 185, 12 P2d 767, 83 ALR 1341, 1346); even when the owner of the invaded close has failed to erect any artificial markings on his boundaries. *Cosgriff v. Miller,* 10 Wyo 190, 68 P 206; 52 Am Jur, supra, at 846.

The potentialities for trespass, intentional or unintentional, are increased when timber is harvested in places where there are contiguous areas of timber held under different ownerships and easily encroached upon unless boundary lines are clearly and definitely established. Visible monuments and other perceptible indicia of boundary lines in the vast and relatively remote timbered districts of this state are the excep-

tion rather than the rule and present a constant danger of encroachment on a neighboring area unless there are clearly marked boundaries.

*Longview Fibre Co. v. Johnston,* 193 Or 385, 238 P2d 722 (1951), was a contest between the owners of adjoining timber properties. The boundary lines of the trespassed area were the principal cause of the dispute. The defendant in that case had failed, as did the defendants in the case at bar, to determine in advance the exact location of the boundary lines. In resolving the issues in favor of the plaintiff, we said at page 400:

> "It was defendant's *duty* to have determined in advance the exact location of his boundary line. There is no evidence that he made any attempt whatever to do so until after his cutting of timber upon plaintiff's land had been called in question. This fact tends rather to aggravate the trespass than to excuse it." (Emphasis supplied.)

The "duty" to which the court referred was the duty to take the necessary precautions by proper survey to insure against the highly probable damage which would otherwise ensue to the owner of the adjacent property.

The evidence supports the conclusion that Hillyard and Harris had knowledge of the probabilities of trespass and the earlier but unintentional trespass of Harmon even before the Laynes began to cut. In addition to their knowledge of the dangers of trespass in the logging area for want of adequate boundary lines, the defendants continuously labored under a heavy burden to avoid any overt acts which might subject the United States to claims for damages. Their contract with the government obligated them to save

it harmless from all losses resulting from their negligent acts or those of their "contractors, subcontractors or employees," and particularly stipulated losses resulting from trespass. It would seem with such an inducement to caution, prudence and self-interest that Hillyard and Harris would have been less laggard and less indifferent than they were in establishing the boundary lines and informing the Laynes of the nature of the contiguous ownerships. At all times they had in their possession maps and data which would have enabled a surveyor to find and readily mark the necessary lines.

Here the duty of Hillyard and Harris is manifest. In 1957 they had been alerted by Mr. Noyes, an officer of Gordon, to the danger of trespass by the earlier operations of Harmon. But before the Laynes began operations in the first part of November, 1958, Harris, in defendants' office, did no more than to show the Laynes two aerial maps of the area and a wall map. These he used to point out to the senior Layne, with surprising vagueness, where the corners were supposed to be. Harris gave Layne no information as to the surrounding ownership and Layne had no personal knowledge as to the true boundary lines. From the exhibits we know that the defendants' office was at or near Boring, Oregon, some miles distant from the Larch Mountain area. Hillyard and Harris relied on the assistance of a Mr. Holmes, an occasional employee, but not a surveyor, to show the Laynes the exact boundaries. Holmes was not called as a witness. The testimony of W. S. Layne indicates that this was not done until after the Laynes had begun operations; and then, Holmes did no more than "point out" lines in Section 1. Holmes was later a party on the Marx survey in 1959. Defendant Gail Layne stated that he

had no personal knowledge as late as May, 1959, of where the true boundary lines were.

W. S. Layne testified that in the latter part of January or February, 1959 (some two or three months after the Laynes had started operations), some lines were run by the Marx brothers, surveyors, for Hillyard and Harris and their location was later shown him. It would appear that the activities of the Marx brothers mark the first display of interest by the defendants in definitely and clearly establishing boundary lines for the guidance of the Laynes. But this was not done until it appeared that the defendants might be charged for the trespasses of the Laynes. Even then the markings were so uncertain that the Laynes were not aware that any trespass had been committed until so informed by Mr. Bjork, another surveyor later retained by Hillyard and Harris, after hearing complaints of trespass from Gordon, in May, 1959. By that time the cutting had long ceased and the Laynes were in the process of removing logs previously felled.

In answer to an inquiry by the trial judge, Harris testified that he had never been to the trespass area, had never gone over the boundary lines, and was "too busy" to know where the actual boundary lines were. Hillyard admitted having said in his deposition in answer to a question concerning the extent of his knowledge of the area, "I don't hardly know where the place is." These were the two men who had the primary duty of pointing out to the Laynes the area in which they were to log and protecting the adjacent owner against possible trespass.

Apparently, neither Hillyard nor Harris ever took the time to confirm the lines personally and in the beginning contented themselves with merely warning

the Laynes against trespassing. But there is nothing in the record to indicate that either Hillyard or Harris made any effort to find out if the Laynes were observing this admonition. On the whole, the testimony of the Laynes as to their actual knowledge of the true boundary lines was also very uncertain. The testimony of Hillyard and Harris was not only vague concerning their efforts to establish boundary lines, but evinced an indifference to the necessity for their clear establishment. Of this, however, we are certain: no surveys of value for boundary lines were made until sometime in 1959 and months after the operations of the Laynes began. We are equally certain that the defendants had heard of the trespasses long before the boundaries were marked and surveyed. Viewing the Laynes as independent contractors, the concurring negligence for which the defendants would be answerable to Gordon was their failure to discharge the duty of showing the Laynes the correct location of the boundary lines. In 57 CJS 358, Master and Servant § 589, we find the following statement:

> "As a general rule, if injury results from work done by an independent contractor in accordance with defective plans or specifications furnished by the contractee, the latter will be liable for the injury. * * *"

See, also, *Amann v. City of Tacoma*, 170 Wash 296, 16 P2d 601, 607.

If liability is cast upon the employer of an independent contractor because of damage arising from the use of defective plans and specifications, reason dictates that the employer's liability likewise accrues as to damages arising from the contractor's activities resulting from a want of plans or specifications in

work where plans and specifications were essential to the accomplishment of the contractor's undertaking without damage to the employer's neighbors. Here, the "plans and specifications" needed by the contractor was a survey of boundary lines to avoid trespassing on the property of Gordon.

The following cases sustain the proposition that when one sends a party to a certain area to cut timber or to remove minerals and fails to have the boundaries sufficiently surveyed as a precaution against trespass and damages result to an adjoining owner, then the person whose duty it was to have boundaries correctly established is held as a cotrespasser and can not avoid liability because the party actively logging the timber was an independent contractor. *Kirby Lbr. Corp. v. Karpel,* 233 F2d 373, 375 (5th Cir 1956); *Lewis v. Mays,* 208 Ark 382, 186 SW2d 178 (1945); *Crisler v. Ott,* 72 Miss 166, 16 S 416 (1894); *Cummer Mfg. Co. v. Copeland* (Tex Civ App 1931), 35 SW2d 758 (1931); *W. E. Belcher Lbr. Co. v. Woodstock Land & Mineral Co.,* 245 Ala 5, 15 S2d 625, 629 (1943).

The following cases apply the same fundamental rule of liability for trespasses incident to imperfect descriptions arising under slightly different circumstances. In *Lewis v. Phillips,* 223 Ark 380, 266 SW2d 68 (1954), the damage was to bridges on adjacent property. In *Hutto v. Kremer,* 222 Miss 374, 76 S2d 204 (1954), the trespass to the neighbor's timber was the result of a seller furnishing a purchaser of timber a misleading description as to its location. In *Kershishian v. Johnson,* 210 Mass 135, 96 NE 56, 57 (1911), the owner of a lot sent a contractor to build a house on a lot of uncertain boundary.

In all the cases above cited except one it will be found that the defendant employer rested on the de-

fense of nonliability because the work had been done by an independent contractor. In every instance where such a defense was asserted it was brushed aside by the appellate court.

*Kirby Lbr. Corp. v. Karpel,* supra, presents a factual situation similar to the one before us and the federal court's reasoning there is highly persuasive. In *Kirby* an agent of the land-owning defendants arranged with defendant White to cut and remove timber from defendants' land. Since White was unfamiliar with the boundary lines, the agent took him to the land and pointed out one or two of the lines and warned White to stay within them. But the agent referred White to third parties to point out to White the other lines necessary to his guidance. This the third parties ultimately did, but incorrectly, thereby causing White to trespass and cut trees on plaintiffs' land. The proceeds from the sale of the timber, both from plaintiffs' and defendants' property, were divided between White and the rest of the defendants. The same kind of division was made in the instant case between the Laynes and Hillyard and Harris. In holding the land-owning defendants responsible to Kirby for the acts of White, the court said:

> "There was not, to be sure, any physical cutting and removing of timber by the appellants from the land of plaintiffs. We think it is unnecessary to determine whether the role of McKinley White, who did the physical cutting and removing of timber from plaintiffs' lands, was employee or agent, or an independent contractor of the land-owning defendants, or whether he was a timber purchaser. The liability of the defendants is not and was not intended to be dependent upon their participation in the actual severance and removal of the timber either personally or through an agent or employee.

\* \* \* [citing McDaniel Bros. v. Wilson (Tex Civ App 1934), 70 SW2d 618, 621]

"\* \* \* \* \*

"\* \* \* The failure to discharge the duty, assumed by the land-owning defendants acting through their agent, to show the correct location of the boundary lines, casts on them the liability for the damage resulting from that failure. That damage has been found to be the stumpage value of the timber cut from the plaintiffs' land." (233 F2d at 375)

See, also, VI Casner, American Law of Property, 1534, § 28.1.

In *Hutto v. Kremer,* supra (76 S2d 204), one Hutto furnished Brooks with a misdescription of land from which he was to cut timber. The mistake led Brooks into a trespass on the lands of Kremer. The appellate court of Mississippi in holding Hutto as a joint-tortfeasor with Brooks, declared:

"It was of course an actionable wrong for Brooks to cut Kremer's timber without authority from him to do so; and if the appellant induced that action by a misrepresentation of the location of the west boundary line of the 23-acre tract, even though that misrepresentation may not have been made with the intention to mislead, the appellant became a joint tortfeasor, and was liable for the damage done. The jury by their verdict have found that the appellant was liable because of the misdirection given by him to Brooks as to the location of the boundary line of the 23-acre tract on which Hutto's timber was situated. \* \* \*" (76 S2d at 208)

*Crisler v. Ott,* supra (16 S 416), was a case wherein Crisler, the owner of timber on land adjacent to Ott, contracted with Halbert, as an independent contractor, to cut his timber. Halbert trespassed upon Ott's land

because of the uncertainty of the boundary line between the Crisler and Ott holdings. Crisler was held liable as a cotrespasser with Halbert because "he [Crisler] negligently failed to acquaint himself with the true line." (16 S at 417) We find no cases to the contrary. See, also, Falk, Timber and Forest Products Law, 119, § 161 (1958); 1 Cooley, Torts (4th ed), 273 § 85; 57 CJS 365-366, Master and Servant § 591.

Although we find no timber trespass cases in Oregon raising the precise question found in the last-mentioned decisions, we do find that this court has declared against the exoneration of an employer for tortious acts of his independent contractor when they arise under circumstances or out of legal relationships akin to those found in the cases above cited. See *Eitel v. Times, Inc.,* 221 Or 585, 591, 352 P2d 485 (1960); *Giaconi v. City of Astoria,* 60 Or 12, 36-37, 113 P 855, 118 P 180, 37 LRA (NS) 1150 (1911).

The failure of Hillyard and Harris to promptly disavow the acts of the Laynes or to take prompt action to avoid further trespasses may well be interpreted as an implied ratification. *Kneeland v. Shroyer,* 214 Or 67, 93, 328 P2d 753; *Glaser v. Slate Const. Co.,* 196 Or 625, 639, 251 P2d 441. Had the defendants been diligent in doing these things, it is reasonable to believe this trespass might not have occurred.

There are circumstances in this matter which make the rule committing Hillyard and Harris to liability for damages particularly applicable. We have already observed that the gross returns from the sales of the logs cut by the Laynes were divided on the basis of 60 per cent to the Laynes and 40 per cent to Hillyard and Harris. These divisions included the proceeds from the sales of all logs cut and sold by the Laynes.

It would be contrary to principles of justice to allow Hillyard and Harris to retain a share in the fruits of the trespasses and at the same time exonerate them from all liability for the damage sustained by the plaintiff Gordon.

█ The question whether the appellants discharged their duty to ascertain the boundary lines and inform the Laynes of their location was a question of fact for the determination of the trial judge sitting as a jury. As there was substantial evidence of the appellants' failure in that regard, this court is without power to disturb the lower court's finding.

█ Notwithstanding that appellants claiming error in the denial of motions for nonsuit or directed verdict are limited on appeal to the grounds stated in their original motions (*Pokorny v. Williams,* 199 Or 17, 23, 260 P2d 490; *Edvalson v. Swick,* 190 Or 473, 478, 227 P2d 183), the defendants in their brief attempt to raise an additional ground in support of their motions. We quote: "There is no substantial evidence to base a judgment for damages in any amount." Under the authority of the cases cited, we are compelled to ignore it.

We will later review the defendants' second assignment, but now give attention to the defendants' assignments of error numbered 3 to 9, inclusive. This requires that we first dispose of the question of the timeliness of the filing of the defendants' objections to the findings as made by the court on September 20, 1960.

ORS 17.430① is the controlling statute and estab-

---

① "Upon the trial of an issue of fact by the court, its decision shall be given in writing, and filed with the clerk within 30 days after the submission of the issue of fact to the court. The decision shall consist of either general or special findings without argument or reason therefor. All parties appearing in the case shall have

lishes the filing time for findings and objections thereto. It is plain and unambiguous. Its mandatory language requires no construction.

From the record we learn that the trial was concluded on July 15, 1960. On August 29, 1960, the court handed down a memorandum opinion. In accordance with the direction therein contained, counsel for Gordon prepared findings and a judgment order. A copy of plaintiff's proposed findings, conclusions and form of judgment was served on counsel for the defendants on September seventh. The defendants thereafter failed to file any objections thereto or to request other, different or additional findings "within 10 days after such service" (ORS 17.430, supra). Therefore, the trial judge on September twentieth adopted without alteration the findings and conclusions requested by plaintiff, and at the same time entered judgment against the defendants. This was docketed the follow-

---

the right to request either special or general findings. Any findings so requested by any party shall be served upon all other parties who have appeared in the case, and such adverse parties may, within 10 days after such service, present to the judge objections to such proposed findings or any part thereof and request other, different or additional findings. When the findings are prepared by the court or judge thereof without request by any party for either special or general findings, such findings shall be filed with the clerk, and the clerk forthwith shall mail a copy thereof to an attorney of record for each party appearing in the case, and any such party may, within 10 days after the filing of such findings, object thereto and request other, different or additional findings. If objections are filed to such findings and request is made for other, different or additional findings, such objections and request shall be heard and determined by the court within 50 days from the date of filing of the findings, and not thereafter, and if not so heard and determined within that time the objections and request shall be conclusively taken and determined denied. Nothing in this section shall prevent the court from either shortening or extending the time in which to file objections or request other, different or additional findings or prevent the parties to the case stipulating or agreeing to the findings to be entered."

ing day. It was not until September twenty-seventh, 17 days after service of plaintiff's proposed findings, and seven days after the entry of judgment, that the defendants served the following-entitled papers upon plaintiff: "Objections to Findings of Fact and Conclusions of Law and Decree [as entered by the court on September twentieth] and Motion for Order Setting Aside Judgment and Allowing New Trial" and "Requested Findings of Fact, Conclusions of Law and Judgment."

The plaintiff, relying on ORS 17.430, supra, promptly moved to strike from the files the defendants' objections to the findings previously entered and their requested findings on the ground that they had not been filed within the time prescribed by that section. The court, however, denied the motion and heard argument on the defendants' objections to the findings previously entered.

The papers filed by the defendants on September 27, 1960, were not accompanied by any affidavit or other statement tendering an excuse or offer of explanation for their delay, nor did the defendants make any application for an extension of time in which to file objections to those tendered by plaintiff. See 17.430, supra. Apparently, the defendants chose to rely solely upon their erroneous construction of ORS 17.430 as entitling them to proceed as they had done. This conclusion is supported by a recital found in the court's order denying plaintiff's motion to strike the defendants' papers from the files. It reads: "Defendants contend the pleading served upon defendants on about September 7, 1960 and entered in this Court's Journal on about September 20, 1960, designated 'Findings of Fact, Conclusions of Law and Decree,' *constitutes findings prepared by the Court*

*or by the Judge thereof without request by any party for either special or general findings."* (Emphasis supplied.)

After hearing, the court overruled the defendants' objections and denied their requested findings. Based upon that order, the defendants assign seven separate assignments of error on this appeal challenging the order of the court in overruling certain of their objections to findings or requests as to others (assignments 3 to 9, inclusive).

We note that the defendants' reply brief ignores plaintiff's reference to the delayed filing of the papers to which we above make reference. If the defendants are relying on the recital taken from the court's order as legal exoneration for their delay, then we declare it is devoid of merit. The fact that plaintiff served its proposed findings on the defendants on September seventh is sufficient proof that they were the requested findings of plaintiff and not findings prepared by the court "without request by any party." (ORS 17.430, supra)

We hold the findings adopted by the court on September twentieth and filed with the clerk on September twenty-first were, in terms of the statute, findings requested by plaintiff and not within the statutory category of "findings * * * prepared by the court * * * without request by any party." Therefore, the defendants' right to object thereto or request additional findings expired 10 days after service made by plaintiff and not 10 days after the date the findings were filed with the clerk. ORS 17.430, supra.

While this court has not heretofore been presented with a statement of circumstances precisely like those revealed here, it has on several occasions passed upon matters similar thereto arising under ORS 17.430. In

*Carlson v. Steiner,* 189 Or 255, 220 P2d 100; *DuMond v. Byron Jackson Co.,* 139 Or 57, 6 P2d 1096; *Twin Falls Bank v. City Electric,* 218 Or 542, 346 P2d 84; *Winters v. Bisaillon,* 153 Or 509, 57 P2d 1095, 104 ALR 968; and *Scott v. Lawrence Whse. Co.,* 227 Or 78, 360 P2d 610 (1961), emphasis was placed upon a *timely filing of objections* to proposed findings if the objector was to successfully avail himself on appeal from overruled objections. See, also, *Consolidated Freightways, Inc. v. West Coast Fast Freight, Inc.,* 188 Or 117, 212 P2d 1075, 214 P2d 475.

In *Carlson v. Steiner,* supra (189 Or at 267), this court declined to consider an objection made to a certain finding because of "the failure to submit objections to the findings of fact * * * *within the time allowed,* or at all, * * *." (Emphasis supplied.) *Winters v. Bisaillon,* supra, at 516, is to the same effect.

In *DuMond,* supra (139 Or at 60-61), emphasis was not only placed on a timely request for findings, but it was also there declared that such a request must be made before entry of judgment. The necessity of filing objections before entry of the judgment is also noted in the *Twin Falls Bank* case, supra (218 Or 542).

The following pertinent statement from 89 CJS 499, Trial § 655, summarizes our position:

"* * * It is too late to except to a finding after the decisions is made. Where the time for objections is specified by statute, or rule of court, an objection or exception made thereafter is ordinarily too late, * * *." (Citing *Twin Falls Bank v. City Electric Co.,* supra.)

See, also, 3 Bancroft, Code Pleading, Practice and Remedies (10 yr supp), 2206, § 1671.

We hold that the objections of the defendants should have been filed within 10 days after the service of plaintiff's requested findings upon them or within the time granted by an extension for that purpose, if an extension of time had been seasonably applied for and granted; and that plaintiff's motion to strike their objections and request for findings should have been allowed; and that the hearing had thereon was a nullity affording no foundation for the order which they here make the basis for their seven assignments of error, numbered 3 to 9, inclusive.

If no objections are timely taken to the findings, they are conclusive and this court can not consider the evidence upon which the findings were based. *Mullennex v. Draper,* 220 Or 1, 2, 347 P2d 990. "In such a case, erroneous rulings upon questions of law may be appealed only on the ground that the established facts cannot support the judgment." *Scott v. Lawrence Whse. Co.,* supra (360 P2d at 620).

The last statement brings to the fore the defendants' second assignment of error, wherein they contend that the court's findings are "at variance with and do not support and conform with the judgment entered herein."

That assignment is predicated upon a complex of four or five different findings made by the court. They point to the fact that the court found that the Laynes were agents or employees of the defendants Hillyard and Harris and that the defendants had ratified and acquiesced in the trespass of the Laynes; that it also found that the trespasses of the Laynes were wilful and wanton with consequential liability for treble damages, but that there was no evidence of physical trespass on the part of the Laynes' employers; and that at the time of the ratification of the acts of the Laynes

by Hillyard and Harris, the latter had no knowledge of the wilful and wanton character of the acts of the Laynes as distinguished from casual, involuntary or nonwilful trespass.

These findings referred to above produced the following conclusion of law by the trial judge:

> "Although plaintiff has carried the burden of proof that the trespass on the part of defendants Layne was willful and wanton, plaintiff has failed to carry the burden of proof that the trespass was willful and wanton on the part of defendants Hillyard and Harris, and therefore since all of these defendants are being held liable, the judgment should—on the principle that in suing all defendants, plaintiff has waived its right to exemplary damages if some are not subject thereto— be entered herein at double the sum of $4,615.20 in accordance with ORS 105.815."

Consistent with the foregoing, the court thereafter entered judgment against all the defendants in the amount of $9,230.40, which is double the sum of $4,615.20, in accordance with ORS 105.815 when a trespass is casual or involuntary. This it did, and we think correctly, notwithstanding that plaintiff's prayer was for treble damages (ORS 105.810).

The defendants argue that because the trespass was found to be wilful and wanton on the part of the Laynes, the court had no alternative but to enter judgment for treble damages against all four defendants, and having failed to do so, there can be no valid judgment against the defendants Hillyard and Harris. We find no merit in this argument.

ORS 105.815, providing for double damages for wrongful cutting of trees in cases where the trespass is casual or involuntary or under a belief of right, was intended to provide only accumulative damages

rather than penal damages. *Kinzua Lumber Co. v. Daggett,* supra (203 Or at 607). ORS 105.810 makes provision for treble damages when the cutting was wilful, intentional and without plaintiff's consent and was intended as a statutory measure for punitive or exemplary damages under such circumstances. *Kinzua Lumber Co. v. Daggett,* supra; *Wilson v. Kruse,* 199 Or 1, 6-7, 258 P2d 112; *Eastman v. Jennings-McRae Logging Co.,* 69 Or 1, 12, 138 P 216. See *Michigan Land & Iron Co. v. Deer Lake Co.,* 60 Mich 143, 27 NW 10, 11, where the court, construing a statute allowing treble damages for a timber trespass, observed: "Treble damages under this statute are in their nature punitory, * * *." "[T]he fact that the trespass was willful or malicious is material only for the purpose of obtaining punitive damages." 87 CJS 959, Trespass § 5; 15 Am Jur 742, Damages § 300.

Thus, we find under the findings defendants Hillyard and Harris are potentially liable for the compensatory damages as measured by ORS 105.815 and defendants Layne, because of their wilful and wanton conduct, would normally respond in treble damages under ORS 105.810.

In this jurisdiction plaintiff could not recover against the defendants in different amounts. *Gill v. Selling,* 125 Or 587, 594, 267 P 812, 58 ALR 1556. As said in 2 Sutherland, Damages (4th ed), 1327 § 407, and cited with approval in the *Gill* case:

"* * * In such a case the plaintiff has his election to proceed against any or all of the wrongdoers. By making them all defendants he waives his right to exemplary damages if some of them are not subject thereto. * * *"

See, also, *Bowles v. Creason,* 156 Or 278, 298, 66 P2d

1183; *Pelton v. General Motors Accept. Corp.,* 139 Or 198, 205, 7 P2d 263, 9 P2d 128.

Under the court's findings of fact the judgment as rendered for double instead of treble damages was clearly proper.

■ And lastly the defendants urge upon us that the trial court erred in denying their motion for a new trial. The motion is a nullity. It submits nothing which occurred after the close of the trial and presents nothing for our consideration on appeal. *Klemgard v. Wade Seed Company,* 217 Or 409, 420, 342 P2d 757; *Lenchitsky v. H. J. Sandberg Co.,* 217 Or 483, 494, 343 P2d 523; *Sherman v. Bankus,* 218 Or 271, 274, 344 P2d 771.

Affirmed.